Robert James CAMPBELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 71491.

Court of Criminal Appeals of Texas,
En Banc.

June 14, 1995.

Rehearing Denied Sept. 17, 1995.

Winston E. Cochran, Jr. (court appointed on appeal) Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Carol M. Cameron and Ira Jones, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

BAIRD, Judge.

Appellant and an accomplice abducted the victim at a gas station in Houston and fled in her car. The victim was raped and taken to an abandoned field where she was fatally shot. Appellant was convicted of capital murder committed in the course of the attempted commission or commission of aggravated sexual assault or robbery. Tex.Penal Code Ann. § 19.03(a)(2). After the jury affirmatively answered the punishment issues, the trial judge sentenced appellant to death. Tex.Code Crim.Proc.Ann. art. 37.071(g). Appeal to this Court is automatic. *Id.* at (h). We will affirm.

### I.

The first point of error contends the trial judge erred in failing to apply the law of conspiracy to the facts of the case in the application paragraph of the jury charge.

### A.

The abstract portion of the jury charge defined parties pursuant to Tex.Penal Code Ann. §§ 7.02(a)(2) and 7.02(b). Specifically, the abstract portion provided:

> All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person who is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.
>
> A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or at-

tempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

*If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.*[1]

However, the application paragraph of the jury charge only applied a portion of the law of parties to the facts of the case and completely omitted any language referring to criminal responsibility due to conspiracy. Specifically, the application paragraph provided:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 3rd day of January, 1991, in Harris County, Texas, [appellant], did then and there unlawfully while in the course of committing or attempting to commit the kidnapping of [the victim], intentionally cause the death of [the victim] by shooting [the victim] with a deadly weapon, namely, a firearm; *or if you find from the evidence beyond a reasonable doubt that on or about the 3rd day of January, 1991, in Harris county, Texas, Leroy Lewis did then and there unlawfully while in the course of committing or attempting to commit the kidnapping of [the victim], intentionally cause the death of [the victim] by shooting [the victim] with a deadly weapon, namely, a firearm, and that [appellant], with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid Leroy Lewis to commit the offense, if he did, [then you will find the defendant guilty of capital murder, as charged in the indictment.]*[2]

Appellant objected to the trial judge's failure to apply the law of conspiracy to the facts of the case. He argues that *Johnson v. State,* 739 S.W.2d 299, 305 (Tex.Cr.App.1987), requires, upon request, the trial judge to apply the law to the facts of the case.

### B.

The application paragraph of a jury charge is that which authorizes conviction, and an abstract charge on a theory of law which is not applied to the facts is insufficient to bring that theory before the jury. *Jones v. State,* 815 S.W.2d 667, 669 (Tex.Cr.App.1991) (and cases cited therein). Where the application paragraph refers to the law of parties described in the abstract portion of the charge, the jury is authorized to convict upon a parties theory. *Johnson,* 739 S.W.2d at 305 n. 4. A defendant who objects to a general reference to the law of parties in the application paragraph is entitled to increased specificity and to have the law of parties applied to the facts of the case. *Johnson,* 739 S.W.2d at 303–305; *Romo v. State,* 568 S.W.2d 298, 303–304 (Tex.Cr.App.1978) (op'n on reh'g). Conversely, it is error for a trial judge to refer to the law of parties in the abstract portion of the jury charge and not to apply that law or to refer to that law in the application paragraph of the jury charge. *Johnson,* 739 S.W.2d at 303–305; *Romo,* 568 S.W.2d at 303. Accordingly, the trial judge erred in denying appellant's request to apply the law of conspiracy to the facts of the case in the application paragraph of the jury charge.[3] We now proceed with a determination of harm.

1. All emphasis is supplied unless otherwise indicated.

2. A separate application paragraph, utilizing similar language, authorized conviction for murder in the course of committing or attempting to commit aggravated sexual assault.

3. In practice, these choices are rather simple. The application paragraph of a jury charge authorizes the theory of conviction. *Jones,* 815 S.W.2d at 670. Therefore, if the application paragraph authorizes the conviction of a defendant upon a general theory that he is a principal or party to the crime, then a defendant may be found guilty as either a party or a principal. However, if a defendant objects to the general party language in the application paragraph, he or she is entitled to have the charge specify which theory or theories of the law of parties the State is pursuing and apply the law to the facts in the application paragraph. *Johnson,* 739 S.W.2d at 303–305; *Romo,* 568 S.W.2d at 303.

## C.

■ In *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Cr.App.1984), we held: "if the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of the defendant,' which means no more than that there must be *some* harm to the accused from the error." In the instant case, we find no harm resulted from the error. The State chose to proceed upon the theory of party liability contained in § 7.02(a)(2). And, the trial judge applied only that portion of the party definition to the facts in the application paragraph. Because a jury is only authorized to convict based upon the application paragraph, and because that paragraph did not include *any* reference to conspiratorial liability, the jury was not authorized to convict appellant under a conspiracy theory.[4] *See, Jones,* 815 S.W.2d at 670; *Garrett v. State,* 749 S.W.2d 784, 788–789 (Tex.Cr.App.1986). Consequently, appellant was not harmed.

Moreover, by asking the trial judge to include conspiratorial party liability in the application paragraph, appellant was seeking to enlarge his criminal liability and decrease the State's burden. One cannot be harmed if the trial judge refuses to enlarge the criminal liability.[5] **The first point of error is overruled.**

## II.

■ The fifth point of error contends the trial judge erred in admitting evidence of the deoxyribonucleic acid (DNA) testing. The admissibility of novel scientific evidence such as DNA testing is governed by Tex.R.Crim. Evid. 702. The proponent of the evidence must prove to the trial judge, by clear and convincing evidence and outside the presence of the jury, that the proffered evidence is reliable and therefore relevant. *Kelly v. State,* 824 S.W.2d 568, 573 (Tex.Cr.App.1992). Upon such a showing, the evidence is admissible unless the trial judge determines pursuant to Rule 403 that the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R.Crim.Evid. 403.

■ To be considered reliable, evidence of a scientific theory must satisfy the following three criteria: (a) the underlying theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question. *Kelly,* 824 S.W.2d at 573. On review we must determine whether the trial judge's ruling was "within the zone of reasonable disagreement" given the evidence presented. *Id.; Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Cr.App.1990).

■ Outside the presence of the jury, the trial judge conducted a Rule 702 hearing to determine the admissibility of the DNA test-

---

4. We recently considered the sufficiency of evidence regarding party complicity in *Jackson v. State,* 898 S.W.2d 896 (Tex.Cr.App.1995), where the abstract portion of the jury charge contained a general instruction on the law of parties. The Court of Appeals determined the charge failed to apply the general instructions in the application paragraph. The Court of Appeals reviewed the evidence to determine whether a rational juror could find Jackson acted as a principal and held the evidence insufficient. *Jackson v. State,* No. 2–90–060–CR (Tex.App.—Fort Worth, July 15, 1992).

 On the State's petition for discretionary review, we reversed. We did so because the jury charge contained *two* application paragraphs. *Jackson,* 898 S.W.2d at 899. The first application paragraph authorized the jury to convict under the theory Jackson acted as a principal;

the second application paragraph authorized conviction if the jury found Jackson acted as a party. We held that, absent an objection from Jackson, the jury was authorized to convict based upon the *two* application paragraphs, read together. 898 S.W.2d at 899.

 *Jackson* is an anomaly because the jury charge contained two application paragraphs authorizing conviction for the same offense. *Jackson* is inapplicable to the instant case because this jury charge, as most should and do, contained only one application paragraph.

5. Appellant could have objected to the presence of the superfluous definition of conspiratorial party liability in the abstract portion of the jury charge. In such a case, the trial court should remove the unnecessary language.

ing.[6] At the hearing Gary Harmon, a forensic serologist from the Serological Research Institute in Richmond, California, testified concerning the DNA tests he performed in this case. Harmon testified that the underlying theory of the PCR DNA test is valid, that the technique used in the instant case was valid, and that it was properly applied.

Appellant, citing *State v. Bible*, 175 Ariz. 549, 858 P.2d 1152 (Ariz.1993), argues that the test is not reliable. In *Bible*, the Arizona Supreme Court held that DNA testing was not derived by applying a generally accepted scientific theory. 858 P.2d at 1189. The Court held the probability calculations were flawed in several ways, and this proved fatal to the probability analysis. *Bible*, 858 P.2d at 1188–1189.

In the instant case, appellant did not develop the statistic errors as the defendant did in *Bible*. Nor did he bring *Bible* to the attention of the trial judge. Consequently, we cannot say the trial judge erred in admitting the evidence.[7] **The fifth point of error is overruled.**

### III.

■ The sixth point of error contends the trial judge erred in admitting hearsay testimony to establish third-party consent to search appellant's home. At the time of the search, appellant resided with his mother. Following appellant's arrest, the police asked appellant's mother if she had received any property from appellant. Appellant's mother signed a consent to search form and led the officers to a hall closet containing a coat appellant had given her. The coat was identified as the coat worn by the victim the day of her abduction. Appellant objected to any statements made by his mother, contending they were hearsay. The objections were overruled.

In support of this point of error, appellant relies on *McVickers v. State*, 874 S.W.2d 662 (Tex.Cr.App.1993), where we held the rules of criminal evidence were applicable to pre-trial suppression hearings. *Id.* at 666; Tex. R.Crim.Evid. 1101(4). *McVickers* concerned a pre-trial motion to suppress evidence obtained from an illegal stop, that is, a stop made without probable cause. *Id.* at 663. The two officers who stopped McVickers' automobile did *not* testify at the suppression hearing. Instead, the only officer to testify was the officer who arrived after the stop to take McVickers into custody. During the suppression hearing, the State attempted to ask the officer why the non-testifying officers stopped McVickers. We held the officer could not testify as to the underlying facts

---

6. The record indicates that there are two major types of DNA testing being performed in the United States. The first was addressed in our opinion in *Kelly* called "restriction fragment length polymorphism," or RFLP. 824 S.W.2d at 570. The DNA test conducted in this cause was the second type of test called the "polymerase chain reaction" method, or PCR. Dr. Harmon testified that as to the advantages and disadvantages to the second method of testing:

> [The PCR] method differs from the RFLP in that it isn't as discriminating as RFLP technique whereas you can't say that that DNA came from a person one in a million or one in ten million. Currently there's one genetic marker HLA DQ marker. There are twenty-one types for that particular marker. So you can imagine if you take the population of Houston and divide in twenty-one groups. It's fairly large groups. But the advantage of it can be done on very small amounts of DNA. That's the mainstay of forensic samples. Probably 80 percent of cases don't have the quantity or quality of DNA to produce DNA finger-

printing or DNA profiling. So PCR is a handier tool on that. You can take up broken up DNA which is broken up and target the area that you're looking for mini-fold and then do a genetic typing from it.

Essentially, without enough of a sample serologists are unable to perform a complete RFLP DNA profile. The PCR profiling, however, requires much less of a sample. In turn, the PCR test is less exact than the RFLP test.

In RFLP testing, the uniqueness of an individual's DNA is compared to the sample DNA. Comparison of the individual and the sample will in some cases render a likelihood in excess of 99% that the sample belongs to the individual. In PCR testing, the comparison of the sample is used to determine whether the defendant is within a class that is excluded from the persons who may have left the sample. The size of the class of persons will vary with the size of the sample.

7. Appellant does not assert on appeal that the evidence was inadmissible because the probative value outweighed the prejudicial effect pursuant to Rule 403.

which formed the basis for the non-testifying officers to stop McVickers. However, we specifically stated that the holding did *not* eliminate the "general doctrine supporting the admissibility of hearsay in suppression hearings." *Id.* at 666.

 As a general rule, hearsay is admissible to show consent to search. *Murphy v. State*, 640 S.W.2d 297, 299 (Tex.Cr.App.1982). As a practical matter, an officer's reasonable belief that he had consent to search, or articulable suspicion to stop a car, or probable cause to arrest, forms the basis for a trial judge's determination whether to suppress the evidence obtained from the complained of conduct. The officer's belief may be comprised of hearsay statements, for example, the eyewitness who says a car ran a red light, or a dispatcher who reports that a car of a particular make or model fled a crime scene, or an individual who consents to a search of his automobile. *McVickers* did *not* eliminate this general rule. *Id.* at 666. Rather *McVickers* stands for the proposition that only the officer(s) who obtained the evidence which is the subject of the suppression motion can testify as to the underlying reason(s) for engaging in the conduct which produced the evidence. 874 S.W.2d at 665–666.

We believe the trial judge's overruling of appellant's hearsay objection in the instant case was consistent with *McVickers*. Here the testimony was *not* attempting to establish why *another* officer believed the search was consensual. Rather the testimony was elicited to establish why the *testifying officer, who conducted the search,* believed he had consent to search appellant's residence. **The sixth point of error is overruled.**

## IV.

 In his seventh point of error, appellant contends that because of the recent statutory changes in minimum parole terms, we should change our review of sufficiency claims concerning the future dangerousness punishment issue.[8] We do not believe these statutory changes should affect our sufficiency review. As a general rule, parole is not a consideration for the jury in the sentencing phase of a capital trial. *Smith v. State*, 898 S.W.2d 838, 846 (Tex.Cr.App.1995); *Jones v. State*, 843 S.W.2d 487, 495 (Tex.Cr.App.1992); *Stoker v. State*, 788 S.W.2d 1, 16 (Tex.Cr. App.1989). And because parole is not a consideration for the jury, it should not be a consideration for appellate review when determining the sufficiency of the evidence to support the answer to the issue.[9] *See, Geesa v. State*, 820 S.W.2d 154, 156–159 (Tex.Cr. App.1991) (rejection of appellate review using reasonable hypothesis analytical construct in circumstantial evidence cases because juries were no longer specially instructed in circumstantial evidence cases on the same). **The seventh point of error is overruled.**

The judgment of the trial court is affirmed.[10]

MCCORMICK, P.J., and CLINTON and MANSFIELD, JJ., concur in the result.

---

**8.** The punishment issues asks, "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society?" Tex.Code Crim. Proc.Ann. art. 37.071, § 2(b)(1) or 37.0711, § 3(b)(2).

**9.** We note that the term of years appellant will serve does not affect whether appellant will be a future danger. Because we have defined "soci-

ety" to include both prison and non-prison populations, the jury should consider appellant's potential danger in the context of both prison and non-prison populations. *See, Jones*, 843 S.W.2d at 495 (defining "society"); *Boyd v. State*, 811 S.W.2d 105, 118, n. 12 (Tex.Cr.App.1991) (same).

**10.** The portions of this opinion dealing with points of error 2, 3 and 4 were not designated for publication.