# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00737-CR

**Kyle Wade Greene, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 56463, HONORABLE JOE CARROLL, JUDGE PRESIDING

## O P I N I O N

A jury convicted appellant Kyle Wade Greene for the capital murder of two persons during the same criminal transaction. *See* Tex. Penal Code Ann. § 19.03(a)(7)(A) (West Supp. 2006). The State did not seek the death penalty, and the court assessed punishment at life imprisonment. *See id*. § 12.31(a); Tex. Code Crim. Proc. Ann. art. 37.071, § 1 (West 2006). In two issues on appeal, Greene contests the factual sufficiency of the evidence and claims error in the jury charge. We will affirm the conviction.

## BACKGROUND

The bodies of Gary Ridley and Sheria Lunde were found in a field near Killeen on May 14, 2004. Both had been shot in the head. Ridley and Lunde had been reported missing in late April after their friends noticed that their home appeared abandoned and that their vehicles, including a black Dodge pickup truck, were missing.

Prior to his disappearance, Ridley had been collecting money in order to purchase a new travel trailer. Ridley's friend Rodney Albertie testified that Ridley hoped to obtain this money through the illicit sale of firearms. Albertie recounted how, on the day they disappeared, Ridley and Lunde stopped at his home and Ridley told him that he and Lunde were on their way to sell a gun. Ridley showed Albertie the gun, and Albertie noticed some of the weapon's unique features such as ventilation holes on the trigger mechanism. A 9 mm pistol recovered by the police from Greene's pickup truck after Greene's arrest was identified by Albertie as the weapon Ridley showed him.

Bell County Sheriff's Deputy Tim Steglich was assigned to investigate the couple's disappearance. During the investigation, Steglich learned that Ridley had told a friend that he was going to sell a gun to a man who drove a pink truck and "lived off Elms Road." Steglich testified that he proceeded to Elms Road and observed a pink truck driving away. He followed the truck and determined that Greene was driving. Steglich confronted Greene and asked him if he knew the location of Ridley's black Dodge truck. Steglich testified that Greene acknowledged knowing the location of the truck, directed Steglich to the location, and gave him the keys to the vehicle. Greene told Steglich that he came into possession of the Dodge pickup truck through his friend Roosevelt Daymon.

Steglich located and interviewed Daymon. Daymon told Steglich that it was Greene who was responsible for obtaining Ridley's truck. When Steglich confronted Greene with Daymon's statement, Greene told Steglich that "Daymon had showed him a location where the bodies of the two missing persons might be found." Greene told Steglich that the location was "near the [Killeen] airport." The bodies of the two victims were found at the place Greene described.

2

Greene gave two handwritten statements that were admitted into evidence. In his statement on May 14, 2004, Greene said that he met Ridley through a mutual friend and learned that Ridley occasionally sold firearms. A few days later, Greene purchased a 9 mm pistol from Ridley, although the statement suggests that Daymon took possession of the weapon. About two weeks after this, Ridley showed Greene another 9 mm pistol and offered to sell it for $250. Greene said that when he told Daymon and another friend, Koran Small, about the second pistol, they decided to steal the pistol from Ridley.

According to this statement, Greene called Ridley and told him that he had a customer for the pistol. On April 26, Ridley and Lunde met Greene at Greene's house. They then drove to the field in Ridley's pickup truck, where they were joined by Daymon and Small, who arrived in Small's car. The four men got out of the two vehicles and, when Greene was not looking, Small shot Ridley. When Lunde got out of the pickup to see what had happened, Small also shot her. In his May 14 statement, Greene admitted participating in the planned robbery, but he denied any prior knowledge of the shootings. He also said that Lunde was not supposed to have been present at the robbery.

Greene gave another written statement on May 21. It was substantially similar to the May 14 statement, but in it Greene said that although Daymon had originally suggested robbing Ridley, Daymon did not participate in the crime and was not present when the murders were committed.

Greene's claim that Small shot Ridley and Lunde was contradicted by two witnesses for the State. Daymon testified that he was not present when the robbery took place but that Greene told him what had happened afterwards. According to Daymon, Greene said that he personally shot

3

both victims and described shooting Ridley in the face. Daymon testified that he "just didn't believe it at first" but, once he was interviewed by Steglich, the situation became more "real" to him. Another friend of Greene's, Anthony Edwards, also testified that Greene told him that he had personally shot both victims.

## DISCUSSION

The trial court's charge contained instructions on the abstract law of parties and criminal responsibility for the conduct of another. *See* Tex. Penal Code Ann. § 7.01(a) (West 2003) (parties generally); *id*. § 7.02(a)(2) (aiding or encouraging another to commit an offense); *id*. § 7.02(b) (felony committed in course of conspiracy to commit another felony). The application paragraph referred the jury to "the foregoing instructions and definitions" and authorized appellant's conviction for capital murder if the jury found beyond a reasonable doubt that appellant, "either acting alone or as a party with Koran Small," caused the deaths of Ridley and Lunde by shooting them in the course of the same criminal transaction.

Greene contends in his first issue that the evidence is factually insufficient to support his conviction for capital murder because he did not expect Lunde to be present during the robbery and, therefore, "could not have anticipated her death as a result of a conspiracy to rob the deceased, Ridley." In his second issue, Greene urges that the application paragraph of the court's charge failed to properly apply the law regarding criminal responsibility for acts committed by co-conspirators to the facts of the case.

### Sufficiency of the Evidence

When there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether a rational trier of fact could have found the essential

4

elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (legal sufficiency); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981) (legal sufficiency); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000) (factual sufficiency). In a legal sufficiency review, all the evidence is reviewed in the light most favorable to the verdict; it is assumed that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Griffin*, 614 S.W.2d at 159 (citing *Jackson*, 443 U.S. at 318-19). In a factual sufficiency review, we view the evidence in a neutral light and ask whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *See Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then determine whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Id*. at 415. We will not reverse a case on a factual sufficiency challenge unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id*. at 417.

The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony. *Jaggers v. State*, 125 S.W.3d 661, 670 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (citing *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981)). An appellate court must be appropriately deferential to the fact-finder's role at trial. *Harvey v. State*, 135 S.W.3d 712, 717 (Tex. App.—Dallas 2003, no pet.) (citing *Jones v. State*, 944 S.W.2d 642, 647-48 (Tex. Crim. App. 1996)). The jury may believe all, some, or none of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Jaggers*, 125 S.W.3d at 670.

A person commits capital murder if he intentionally or knowingly causes the death of more than one person during the same criminal transaction. *See* Tex. Penal Code Ann. § 19.03(a)(7)(A). There is no requirement that the person "anticipate" the death of one of the individuals. Greene's "anticipation" argument is based on one of the State's theories of the case—that Greene and Small conspired to commit robbery and that the murders were committed in the furtherance of that conspiracy. *See* Tex. Penal Code Ann. § 7.02(b).

The court's charge authorized the jury to convict Greene of capital murder if it believed from the evidence beyond a reasonable doubt that Greene, either acting alone or as a party with Koran Small, intentionally or knowingly caused the deaths of Ridley and Lunde. When the trial court's charge authorizes the jury to convict on more than one theory, as it did in this case, the verdict of guilty will be upheld if the evidence is sufficient on any one of the theories. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004); *Rabbani v. State*, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992).

There is legally and factually sufficient evidence that Greene, acting alone, caused the deaths of both victims. Daymon and Edwards both testified that Greene admitted to them, at different times, that he personally shot the victims.

Daymon testified as follows:

Q: Okay. And what—what did he tell you happened out in the country specifically?

A: He said they drove out to the country. They stopped to where they felt comfortable. They got out of the truck. The male—I'm not really sure of his name—got out of the truck first, walked towards the front of the truck. At that time I was told that he—Kyle got out behind the male. He turned around. He shot him. The woman that was in the truck got out, you know, wondering what actually was going on, what happened. . . . As she walked around she was shot also.

6

Q: By who?

A: Kyle, sir.

. . . .

Q: Did he have a nickname that he liked to use?

A: Yes, sir.

Q: And what was that?

A: Hit Man.

Q: Hit Man?

A: Yes, sir.

Q: And back when he was telling you that he—about the killing of the couple, did he tell you where he shot the male?

A: Yes, sir.

Q: Where was that?

A: In the face.

Q: Did he describe anything about the male's appearance after he shot him?

A: Just said that his eye, you know, bulged out of his head.

Daymon confirmed this testimony during cross-examination:

Q: Did Kyle tell you that he had shot Sherry?

A: Yes, sir.

Q: Where did he tell you he shot Sherry?

A: In the head also.

Q: In the head also?

A: Yes, sir.


       Edwards's testimony largely mirrored and corroborated Daymon's testimony:


A: He [Greene] said that he killed the people.

Q: Okay. And did he tell you how?

A: Briefly he said he shot somebody in the head and in the chest.

Q: What was your reaction to that?

A: I thought he was just joking. I mean, everybody just talks. I figured that he was joking so I just brushed it off. But eventually—

Q: Did he tell you what he did with the body?

A: Yeah. He said he put them over there by the air field, what they say on top of the hill.

Q: Did he tell you why he shot them?

A: For a gun.

Q: When he was telling you this, describe the way that he was—he was telling you as far as his demeanor, the way he was standing and what he was doing?

A: I don't remember all that. He just—He was telling me—I mean, he looked serious, and he didn't look like he was playing, but at the same time I figured that he was. . . .


On cross-examination, Edwards persisted in his testimony that Greene admitted shooting the victims:


Q: So it's your testimony then that on Sunday Kyle Greene is telling you that he shot Gary in the face and in the chest?


8

A: I don't know who Gary is. I don't remember exactly what day it was, but that's what he said.

Q: And that he shot a lady.

A: I don't remember.

Q: The man and the lady you referred to.

A: I don't remember all that. He said he shot somebody in the head and chest. He said that was him.

Q: Okay. So he took ownership of that.

A: That's what he said.

Q: Is it possible, Mr. Edwards, that he was referring to the articles in the newspaper—

A: It's possible.

Q: —that y'all were talking about?

A: I asked him. I asked him, look, did you hear about the news what happened on the newspaper? He said that was me.

Q: That's what I'm asking you. Was he saying that article was about them?

A: About them as far as—

Q: About them.

A: —with the people?

Q: Yes, sir.

A: He said that was him.

Q: Okay.

A: He said that was him that did it.

9

Greene argues that Daymon and Edwards were not credible witnesses. The jury is the exclusive judge of the credibility of the witnesses. *See Jaggers*, 125 S.W.3d at 670. The jury could have chosen to credit the testimony of Daymon and Edwards and disbelieve Greene's self-serving claim that Small shot the victims. In addition, the jury heard evidence that Greene was in possession of Ridley's truck and knew where the bodies were located. Viewing all the evidence in the light most favorable to the jury's verdict, the evidence is legally sufficient to support a finding beyond a reasonable doubt that Greene murdered Ridley and Lunde by his own conduct.

The only evidence contradicting the testimony of Daymon and Edwards was Greene's own uncorroborated statements to the police that Small shot the victims. It was not manifestly unjust for the jury to credit Daymon and Edwards's testimony and discount appellant's self-serving statements, and it was not against the great weight and preponderance of the evidence for the jury to conclude that Greene murdered Ridley and Lunde by his own conduct.

Because the jury was authorized to convict Greene on the theory that he personally murdered the two victims and the evidence is legally and factually sufficient to sustain the jury's guilty verdict on that theory, it is irrelevant whether the evidence is factually sufficient to support Greene's conviction on the other theories of culpability presented to the jury in the court's charge. *Guevara*, 152 S.W.3d at 49; *Rabbani*, 847 S.W.2d at 558. Nevertheless, in the interest of justice, we will review Greene's contention that the evidence is factually insufficient with respect to the conspiracy theory of parties liability.

If a person conspires with another to commit a felony, he is criminally responsible for any other felony committed by his co-conspirator if the offense was committed in furtherance of the conspiracy and was one that should have been anticipated as a result of carrying out the

10

conspiracy. Tex. Penal Code Ann. § 7.02(b). Greene does not deny that the State proved that he conspired with Small to rob Ridley, and he concedes that the evidence is sufficient to support a finding that he should have anticipated that Ridley would be murdered as a result of carrying out the conspiracy. He insists, however, that the jury could not reasonably believe that he should have anticipated Lunde's murder because, according to his May 14 statement, Lunde was not supposed to be at the scene of the robbery.

Even if we assume that when they were planning the robbery, Greene and Small did not anticipate that Lunde would accompany Ridley when he came to sell them the second pistol, it does not follow that the evidence is factually insufficient to support a finding that Greene should have anticipated Lunde's murder as a result of carrying out the conspiracy. In that same May 14 statement, Greene said that Ridley and Lunde came to his house early on the day of the planned robbery. He, Ridley, and Lunde then waited for Small to arrive. Small was delayed because he was waiting for his girlfriend to go to work, after which he could use the car. While they were waiting, Small called Greene's house and asked Greene if Ridley had the pistol and if the plan "was going to go down." The jury could reasonably conclude that by this time, it was obvious that Lunde would be a witness to the robbery and that Greene should have anticipated that if Ridley was to be killed, Lunde would be killed also. It is not contrary to the great weight and preponderance of the evidence for the jury to find beyond a reasonable doubt that Greene should have anticipated that Lunde would be murdered as a result of the carrying out of the conspiracy to rob Ridley.

We overrule Greene's first issue.

11

**The Jury Charge**

In his second issue, Greene contends that the jury charge failed to properly apply the law regarding criminal responsibility for the conduct of another to the facts of the case. Specifically, he argues that the application paragraph failed to incorporate the law regarding criminal responsibility for a crime committed by a co-conspirator. Greene did not object to this at trial, but he now asserts it as fundamental charge error. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

Part IV of the trial court's jury charge instructed the jury that a person is criminally responsible as a party to an offense if the offense is committed by his own conduct or by the conduct of another for which he is criminally responsible. *See* Tex. Penal Code Ann. § 7.01(a). Part IV of the charge went on to tell the jury that a person is criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *See id*. § 7.02(a)(2). In part V of the charge, the court told the jury that if in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all the conspirators are guilty of the felony actually committed if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of carrying out the conspiracy. *See id*. § 7.02(b).

The application paragraph did not explicitly apply the abstract law of parties to the facts of the case. Instead, it referred the jury to "the foregoing instructions and definitions" and authorized appellant's conviction for capital murder if the jury found that appellant, "either acting

12

alone or as a party with Koran Small," caused the deaths of Ridley and Lunde in the course of the same criminal transaction.

"The application paragraph of a jury charge is that which authorizes conviction, and an abstract charge on a theory of law which is not applied to the facts is insufficient to bring that theory before the jury." *Campbell v. State*, 910 S.W.2d 475, 477 (Tex. Crim. App. 1995) (citing *Jones v. State*, 815 S.W.2d 667, 669 (Tex. Crim. App. 1991)). It is error for a trial court to instruct the jury on the law of parties in the abstract portion of the charge but then fail to apply or refer to that law in the application paragraph of the charge. *Id*. But where the charge includes abstract instructions on the law of parties and the application paragraph incorporates those instructions by reference—that is, where the application paragraph authorizes the defendant's conviction based on a finding that he acted "alone or as a party"—the jury is authorized to convict on the parties theory. *Marvis v. State*, 36 S.W.3d 878, 880 (Tex. Crim. App. 2001); *Campbell*, 910 S.W.2d at 477; *Chatman v. State*, 846 S.W.2d 329, 332 (Tex. Crim. App. 1993). The court's charge in this cause was adequate to authorize Greene's conviction for the capital murders of Ridley and Lunde by his own conduct and by Small's conduct for which Greene was criminally responsible as a party pursuant to sections 7.02(a)(2) and 7.02(b).[1]

Greene argues that the application paragraph should have directly applied the law of parties, and in particular the law regarding criminal responsibility for the conduct of a co-conspirator,

---

[1] In its brief to this Court, the State argues that culpability as a co-conspirator is not part of the law of parties. This is incorrect. Section 7.02(b) defines one manner in which a person can be held criminally responsible for the conduct of another and hence a party to the offense under section 7.01(a).

13

to the facts of the case. Greene was entitled to have the law of parties applied directly to the facts, and charge error would be presented if a request for such an application of the law to the facts had been refused by the trial court. *See Campbell*, 910 S.W.2d at 477; *Johnson v. State*, 739 S.W.2d 299, 305 (Tex. Crim. App. 1987); *Govan v. State*, 682 S.W.2d 567, 568-69 (Tex. Crim. App. 1985); *Jaycon v. State*, 651 S.W.2d 803, 808 (Tex. Crim. App. 1983).[2] In the absence of a request or objection, however, the trial court's charge was adequate to authorize Greene's conviction as a party and the court's failure to directly apply the law of parties to the facts was not fundamental error. *See Marvis*, 36 S.W.3d at 879-80; *Chatman*, 846 S.W.2d at 332.

Greene points out that while deliberating his guilt, the jury sent the court a note asking for a clarification of part V of the charge. After referring to the statutory requirement that the offense committed in furtherance of the conspiracy be one that should have been anticipated, the jury asked, "Anticipated by the accused?" The court declined to answer the question and instructed the jury to continue deliberating. Greene argues that had the application paragraph directly applied the law of parties to the facts rather than merely incorporating that law by reference, there would have been no question on the jury's part about the necessity for finding that Greene should have anticipated the murders.

We have already held that the evidence is sufficient to support Greene's conviction pursuant to section 7.02(b) and, in particular, to support a finding that Greene should have anticipated that Small would murder Lunde in the course of carrying out their conspiracy to rob

---

[2] For an example of a direct application of the law of parties to the facts of a case, see *Campbell v. State*, 910 S.W.2d 475, 477 (Tex. Crim. App. 1995).

14

Ridley. We also note that during their arguments to the jury, both the prosecutors and defense counsel discussed the conspiracy theory of parties liability with specific reference to the question of whether Greene should have anticipated that Small would murder Ridley and Lunde. The prosecutors vigorously asserted that the evidence supported a finding that Greene should have anticipated the murders, while defense counsel were adamant that the evidence did not warrant such a finding. Considering the record as a whole, we hold that the trial court's failure to directly apply the law of criminal responsibility for the conduct of a co-conspirator to the facts of the case was not so egregiously harmful as to deny Greene a fair trial. *See Almanza*, 686 S.W.2d at 171. The second issue is overruled.

The judgment of conviction is affirmed.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: June 28, 2007

Publish