

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00206-CR

Joel **ALEJANDREZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 381st Judicial District Court, Starr County, Texas
Trial Court No. 15-CR-101
Honorable Jose Luis Garza, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:       Rebeca C. Martinez, Chief Justice
               Patricia O. Alvarez, Justice
               Liza A. Rodriguez, Justice (concurring in the judgment without opinion)

Delivered and Filed: April 28, 2021

AFFIRMED

Appellant Joel Alejandrez was found guilty by a Starr County jury for the murder of Uriel Magana, Jr. and for tampering with physical evidence. Alejandrez was sentenced to life in prison as to the murder conviction, and ten years confinement concurrently as to the tampering with physical evidence conviction. Alejandrez raises several issues on appeal. He argues that (1) the trial court failed to credit him for all his earned jail time credit; (2) the trial court failed to specifically apply the law of parties to the facts in the jury charge application paragraph for tampering with evidence, and he was harmed by it; and (3) the State forfeited the murder charge

by omitting the words "cause an individual's death" in two of the three manner and means paragraphs in the jury charge for murder, which Alejandrez claims meant that he could only have been convicted of the lesser crime of deadly conduct and that he could only have been sentenced for deadly conduct. We affirm the trial court's judgment.

## BACKGROUND

On August 29, 2014, Joel Alejandrez, Adrian Martinez, Jose Angel Gomez, Jesus Roberto Gomez, and Carlos Martinez drove to Roma, Texas to confront Uriel Magana, Jr. Upon arrival, and before any words were exchanged, Alejandrez fired multiple rounds from a handgun at Magana, who was unarmed. Immediately after Alejandrez shot Magana, he drove himself and his friends away from the scene. Alejandrez looked for a place to hide his car, and Carlos Martinez wrapped the firearm in a blanket and left it in an abandoned house in his neighborhood. Meanwhile, Magana's friends drove him to a hospital in McAllen where he died from his injuries.

On December 1, 2015, a Starr County jury found Alejandrez guilty of murder and tampering with physical evidence. He was sentenced to life in prison for murder and ten years confinement for tampering with evidence, to be served concurrently.

Alejandrez now appeals.

## EARNED JAIL TIME CREDIT

In his first issue, Alejandrez argues that the trial court incorrectly calculated the earned jail time credit as to both convictions for murder and tampering with evidence. He was credited for 646 days of earned jail time credit, but he had already served 648 days in jail. Alejandrez argues that this court should vacate each judgment and remand the cause to correct the time credit. The State responds that this issue is moot because the trial court already signed and entered two judgments nunc pro tunc to correct the error.

There is no dispute over the correct earned jail time credit. Alejandrez argues, and the State agrees, that the earned jail time credit should be 648 days. Alejandrez and the State agree that the trial court incorrectly gave him 646 days of jail credit as of sentencing.

It is clear from the record that the trial court entered an order nunc pro tunc to correct the earned jail time credit two weeks after it heard Alejandrez's motion for new trial on the issue of earned time credit. The issue is therefore moot.

We next address Alejandrez's complaints regarding the trial court's jury charge applications of law to the facts of the case.

**JURY CHARGE APPLICATION**

## A. Parties' Arguments

Alejandrez complains of two jury charge application issues: 1) the law of parties was not adequately applied to the facts of the case for tampering with evidence; 2) two of three application paragraphs for the manner and means of murder did not contain the words "cause an individual's death," thereby invalidating Alejandrez's conviction for murder. The State argues that any error was harmless.

## B. Standard of Review

"Our first duty in analyzing a jury-charge issue is to decide whether error exists." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)). If we find error, then the standard of review "depends on whether the error was preserved." *Gonzalez v. State*, 610 S.W.3d 22, 27 (Tex. Crim. App. 2020) (citing *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020)); *see also Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). Error is reversible if it was preserved with a timely objection and if it caused some harm. *Gonzalez*, 610 S.W.3d at 27; *Almanza*, 686 S.W.2d at 171. If error was not preserved, the error is reversible if the court determines that the error caused

defendant egregious harm.[1] *Gonzalez*, 610 S.W.3d at 27; *Almanza*, 686 S.W.2d at 171. We evaluate the degree of harm based on the *Almanza* factors: (1) the jury charge, (2) the state of the evidence, (3) the parties' arguments, and (4) all other relevant information in the record. *Almanza*, 686 S.W.2d at 171; *see also Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

**C.     Applicable Law**

An application paragraph of a jury charge "authorizes the jury to act by applying 'the pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations,'" and is considered the "'heart and soul' of the jury charge." *Garcia v. State*, 486 S.W.3d 602, 609 (Tex. App.—San Antonio 2015) (citing *Vasquez v. State*, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012)). It must:

> (1) specify "all of the conditions to be met before a conviction under such theory is authorized";
>
> (2) authorize "a conviction under conditions specified by other paragraphs of the jury charge to which the application paragraph necessarily and unambiguously refers"; or
>
> (3) "contain[ ] some logically consistent combination of such paragraphs."

*Id*. at 609–10 (quoting *Vasquez*, 389 S.W.3d at 367). If it fails to meet these requirements, then we find error and conduct an *Almanza* harm analysis. *See Vasquez*, 389 S.W.3d at 370; *see also Garcia*, 486 S.W.3d at 608.

*1.  Law of parties*

"Generally, a charge is sufficient to support a conviction on the parties theory if it instructs the jury on the law of parties in the abstract portion of the charge and the application paragraph incorporates those instructions by reference." *Jones v. State*, No. 07-13-00386-CR, 2014 WL

---

[1] "Errors that result in egregious harm are those that affect 'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Gonzalez*, 610 S.W.3d at 27 (citing *Ngo*, 175 S.W.3d at 743).

4197524, at \*3 (Tex. App.—Amarillo Aug. 25, 2014, pet. ref'd) (mem. op.) (citing *Vasquez*, 389 S.W.3d at 368; *Chatman v. State*, 846 S.W.2d 329, 332 (Tex. Crim. App. 1993)). "However, it is error for a charge not to apply the law of parties directly to the facts when requested." *Id*. (citing *Greene v. State*, 240 S.W.3d 7, 15 (Tex. App.—Austin 2007, pet. ref'd); *see also Vasquez*, 389 S.W.3d at 368. An application paragraph that incorporates law of parties by using the words "acting alone or as a party" is considered adequate if the defendant does not request an instruction more specific to the case. *See Greene*, 240 S.W.3d at 15 (citing *Marvis v. State*, 36 S.W.3d 878, 880 (Tex. Crim. App. 2001)). But if the defendant objects and requests more specific language in the application paragraph, then he is entitled to it. *See Vasquez*, 389 S.W.3d at 368 (citing *Campbell v. State*, 910 S.W.2d 475, 477 (Tex. Crim. App. 1995) ("A defendant who objects to a general reference to the law of parties in the application paragraph is entitled to increased specificity and to have the law of parties applied to the facts of the case."); *Johnson v. State*, 739 S.W.2d 299, 305 n.4 (Tex. Crim. App. 1987) (plurality op.)). To refuse it is error. *See id*.

a. Error

Here, the trial court incorporated law of parties in the application paragraph for tampering with evidence by using the words "acting alone or as a party as that term has been previously defined," so that the application read in relevant part:

> If you believe from the evidence beyond a reasonable doubt that on or about the 29th day of August, 2014, in Starr County, Texas, the Defendant JOEL ALEJANDREZ, did then and there, acting alone or as a party as that term has been previously defined, knowing that an offense had been committed, namely, that he had fired a firearm at or in the direction of URIEL MAGANA, JR. intentionally or knowingly concealed a Smith & Wesson, 9mm handgun, serial number HED3318, with intent to impair the availability of the handgun as evidence in a subsequent investigation or official proceeding related to the firing of the firearm then you will find the defendant guilty of Tampering with Evidence.

In discussing jury charge instructions with the trial court and the State before closing arguments, Alejandrez objected to the application and requested that specific accomplice names and means of commission be included, stating:

> [A]t a time like this, upon specific requests of the lawyer, the court's charge is not sufficient if it just says ask the jury if my guy acting alone or as a party is guilty of the particular crime. That we are supposed to, upon objection, the court is supposed to specifically apply the law to the facts which would say that — name the co-defendants who allegedly did the crime. Here are two accomplices listed in the next paragraph. And that our guy — that my man acting with intent to promote or assist the commission of the tampering by A or B, that one or two accomplices, my guy, defendant, solicited, encouraged, directed, aided or attempted to aid Mr. A or B, the two accomplices, to commit the crime.

The trial court overruled Alejandrez's objection and request to be more specific, which was error. *See Vasquez*, 389 S.W.3d at 368.

.         b. Harm Analysis

There is no dispute that Alejandrez timely objected to the application paragraph for tampering with evidence. Our analysis, however, does not end here. We must now consider the *Almanza* factors to determine whether Alejandrez incurred some harm as a result of the trial court's jury charge error. *Hutch*, 922 S.W.2d at 171; *Almanza*, 686 S.W.2d at 171.

The Jury Charge

The trial court offered an abstract definition for law of parties and cited to it within the application paragraph. The specific means requested by Alejandrez (solicited, encouraged, directed, aided or attempted to aid) included all of the language from the law of parties definition without narrowing the possible means of commission more specifically to the facts of his case. Although the trial court declined to repeat the definition, the application paragraph nevertheless referred jurors to the law of parties definition, which contained the language that Alejandrez requested. *See Vasquez*, 389 S.W.3d at 371 ("We conclude that a reasonable jury would refer to

the abstract definition of the law of parties without needing to have it repeated again in the application paragraph.").

Regarding Alejandrez's request that his accomplices' names be given in the application paragraph, the instructions for tampering with evidence included a statement that Adrian Martinez and Carlos Alberto Martinez were accomplices as a matter of law because they were charged with the same offense, effectively naming them as parties to tampering with the evidence. But more importantly, the focus in the application was on Alejandrez's alleged culpability rather than the names of his accomplices, which were not in dispute. We conclude that Alejandrez was not harmed by the trial court declining to repeat his accomplices' names in the application. *See id.* (concluding that the appellant was not harmed despite objected-to application paragraph omitting the law of parties definition and names of principal actors in robbery).

State of the Evidence

The record shows that Alejandrez was initially in possession of the murder weapon and that he shot Magana. It also shows that he intended to hide the car that he and his accomplices drove to the murder scene in. Accomplices Adrian Martinez and Carlos Alberto Martinez testified that Carlos took the gun, and Adrian watched him hide it in an abandoned house in their neighborhood. Carlos Martinez testified that he believed he initially told a law enforcement officer that Alejandrez told him to hide it, but that after several years Carlos could not remember whether Alejandrez instructed him to hide the weapon. Carlos testified that he did not report the weapon because he feared the legal consequences, and he feared Alejandrez because Alejandrez had just shot Magana.

Alejandrez argues that the evidence does not support any theory of him as a principal actor in tampering with evidence, and that including principal actor language in the application was harmful as a result. Although no testimony established that Alejandrez personally hid the murder

weapon, the error is not necessarily harmful. *See Vasquez*, 389 S.W.3d at 370 (citing *Almanza*, 686 S.W.2d at 171); *see also Watson v. State*, 693 S.W.2d 938, 941 (Tex. Crim. App. 1985) ("Although the evidence was insufficient to raise the possibility of appellant's 'acting alone', appellant was not harmed by the presence of that language in the charge."). On the one hand, the only testimony available regarding who hid the firearm came from Alejandrez's accomplices. Without it, the evidence showed that Alejandrez shot Magana and that the murder weapon was later discovered in an abandoned house in a subdivision where Alejandrez and his accomplices lived. In that sense, conviction on the party theory depended on whether the jury believed Adrian Martinez and Carlos Martinez, and it depended on whether the jury believed that Alejandrez's intent to hide the car also applied to the gun. On the other hand, the prosecutor and defense were both clear on their theories of the case, and the jury was accurately instructed as to the law of parties. In either case, the evidence did not suggest that theories of culpability needed to be eliminated from the jury charge application for the jury to weigh the evidence fairly. *See Vasquez*, 389 S.W.3d at 372 (citing *Watson*, 693 S.W.2d at 940) (concluding harmless error when party theory is clearly instructed, argued, and supported); *cf. Jaycon v. State*, 651 S.W.2d 803, 808 (Tex. Crim. App. 1983); *Apodaca v. State*, 589 S.W.2d 696, 699 (Tex. Crim. App. 1979) (reversing cases in which jury charge applications included principal actor language when defendants could only be found guilty as parties, if guilty at all).

Parties' Arguments

The State's theory of the case was a party theory. In in its opening statement, the State previewed Carlos and Adrian Martinez's testimony: "[T]hey will tell you that this defendant told them to get rid of the weapon; to wipe it down, to wrap it in a blanket, and to take it to an abandoned house. And that is what they did." In closing arguments, the State argued very little to the jury regarding tampering with evidence but advised the jury to use their common sense in applying law

of parties to Alejandrez. The State suggested that for Alejandrez to pass the murder weapon to Adrian and Carlos Martinez meant that they should hide it. Likewise, Alejandrez's closing argument on tampering with evidence was brief but clear. He countered that there should be definitive testimony of an instruction to Adrian and Carlos Martinez to hide the murder weapon, and that the State could not meet its burden of proof without such evidence. The arguments regarding law of parties and tampering with evidence were concise and focused. We conclude that a reasonable juror would not have been confused or misled as a result.

Other Relevant Information

The jury was instructed that before they could return a guilty verdict, they had to find beyond a reasonable doubt that Alejandrez tampered with evidence while either acting alone or as a party. After carefully reviewing the record, we conclude that the jury charge and application paragraph would not have misled a reasonable juror. Therefore, we conclude that Alejandrez experienced no actual harm as to the trial court's failure to specifically apply the law of parties to the facts in the application paragraph.

We now turn to Alejandrez's complaint that the State forfeited the murder charge.

2. *Error in the Murder Charge, Judgment, and Sentence*

Under Texas Penal Code 19.02(b), each subpart of murder requires causing the death of an individual. TEX. PENAL CODE § 19.02(b)(1)–(3); *see also Fraser v. State*, 593 S.W.3d 883, 890 (Tex. App.—Amarillo 2019, pet. ref'd); *Munoz v. State*, 533 S.W.3d 448, 453–55 (Tex. App.—San Antonio 2017, pet. ref'd). Failure to include this element in a jury charge application, may constitute reversible error, because "[a] jury charge which authorizes a conviction without requiring the jury to find all of the elements of the offense charged is fundamentally defective." *Sanchez v. State*, 182 S.W.3d 34, 61 (Tex. App.—San Antonio 2005) (quoting *Evans v. State*, 606 S.W.2d 880, 883 (Tex. Crim. App. 1980), *overruled on other grounds by Woods v. State*, 653

S.W.2d 1 (Tex. Crim. App. 1982)); *see also* TEX. CODE CRIM. PROC. art. 36.14 (requiring jury charge to set out all law applicable to the case and include all essential elements of the offense); *Zuckerman v. State*, 591 S.W.2d 495, 496 (Tex. Crim. App. 1979). However, "[w]hen we review a charge for alleged error, we must examine the charge as a whole instead of a series of isolated and unrelated statements," to see if an essential part was incorporated elsewhere in the instruction. *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995) (citing *Holley v. State*, 766 S.W.2d 254, 256 (Tex. Crim. App. 1989); *Inman v. State*, 650 S.W.2d 417, 419 (Tex. Crim. App. 1983)); *see also Salahud-din v. State*, 206 S.W.3d 203, 210 (Tex. App.—Corpus Christi 2006, pet. ref'd). If there was error, and it was harmless, we will not reverse. *See Almanza*, 686 S.W.2d at 171; *Salahud-din*, 206 S.W.3d at 210.

a. Error

In the second and third subparagraphs of the Application of Law to Facts, the required element of "causes the death" was not included. The jury charge application read as follows:

> If you believe from the evidence beyond a reasonable doubt that on or about the 29th day of August, 2014, in Starr County, Texas, the Defendant JOEL ALEJANDREZ, did then and there intentionally or knowingly cause the death of an individual, URIEL MAGANA, JR., by shooting URIEL MAGANA, JR. with a deadly weapon, then you will find the defendant guilty of murder; or
>
> If you believe from the evidence beyond a reasonable doubt that on or about the 29th day of August, 2014, in Starr County, Texas, the Defendant JOEL ALEJANDREZ, did then and there intentionally, with the intent to cause serious bodily injury to URIEL MAGANA, JR., commit an act clearly dangerous to human life, namely, firing a deadly weapon in the direction of URIEL MAGANA, JR., then you will find the defendant guilty of murder; or
>
> If you believe from the evidence beyond a reasonable doubt that on or about the 29th day of August, 2014, in Starr County, Texas, the Defendant JOEL ALEJANDREZ, did then and there intentionally or knowingly commit or attempt to commit a felony, to wit: aggravated assault with a deadly weapon and in· the course

> of and in furtherance of the commission, or in immediate flight from the commission of said felony, he intentionally or knowingly committed or attempted to commit an act clearly dangerous to human life, to wit: firing a deadly weapon, to-wit: a firearm in the direction of URIEL MAGANA, JR., then you will find the defendant guilty of murder, as charged in the indictment.
>
> Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt as to whether the defendant is guilty of MURDER, then you will acquit the defendant of MURDER and next consider whether he is guilty of the lesser included offense of MANSLAUGHTER.

Omitting the gravamen of the offense of murder, *to cause death*, from two of three manners and means paragraphs in the jury charge application is a plain error. *See Fraser*, 593 S.W.3d at 890; *Sanchez*, 182 S.W.3d at 61. Again, however, we must perform a harm analysis under *Almanza* by looking at the entire charge and the evidence before deciding whether the error was so harmful that reversal is required. *See Salahud-din*, 206 S.W.3d at 210 ("Whenever the accused has claimed fundamental error, including error involving the omission of an entire element from the authorization paragraph, the court reviews not only the entire jury charge, but also the state of the evidence in the case, before deciding whether the error was so harmful as to require reversal.") (citing *Almanza*, 686 S.W.2d at 172).

### b. Harm Analysis

Alejandrez did not preserve this issue in the trial court. Therefore, we evaluate the *Almanza* factors for egregious harm, such that the trial was not fair or impartial. *See Gonzalez*, 610 S.W.3d at 27; *Cosio v. State*, 353 S.W.3d 766, 766 (Tex. Crim. App. 2011); *Sanchez*, 182 S.W.3d. at 61.

Jury Charge

Two of three application paragraphs did not include the required result of causing death. However, the jury instruction for murder begins with the accusation, which contains the required result of causing death. The accusation is directly followed by the statute defining murder, Texas

Penal Code section 19.02(b), which includes the required result of causing death in all three subparts. Furthermore, the instruction for jury unanimity refers to section 19.02(b), requiring the jury to be unanimous under the statute in finding Alejandrez guilty of murder. Finally, the instruction provides the lesser-included offense of manslaughter, which explicitly requires causing death. Nothing from this record suggests that the jury was led to believe they could convict Alejandrez of murder without unanimously finding that he caused Magana's death. This factor weighs against finding egregious harm.

State of the Evidence

The record showed that Alejandrez had a conflict with Magana and drove to Roma, Texas to confront Magana. Alejandrez brought a firearm to the confrontation, shot Magana with the firearm, and caused Magana's death. In closing, Alejandrez conceded that he caused Magana's death. Thus, the errors in the charge were not contested issues in the case. *See Hernandez v. State*, 585 S.W.3d 537, 558 (Tex. App.—San Antonio 2019, pet. ref'd). This factor weighs against finding egregious harm.

Parties' Arguments

The parties' arguments showed no dispute regarding whether Alejandrez caused Magana's death. This factor weighs against finding egregious harm. *See id*.

Other Relevant Information

Neither the State nor Alejandrez point to any other relevant information. *See id*. In considering the *Almanza* factors, we conclude that Alejandrez was not egregiously harmed by the omission of an essential element in two of three jury charge application paragraphs. The record shows no indication that the jury would have been confused about whether all manner and means of murder required causing the death of another, and there is no indication that Alejandrez's trial was unfair as a result of the error. We conclude that the harm Alejandrez alleges is theoretical

rather than actual and that Alejandrez experienced no egregious harm that would warrant reversal. Accordingly, we dispose of Alejandrez's remaining issues as to his judgment and sentence as moot.

## CONCLUSION

We conclude that (1) Alejandrez's earned jail time credit issue is moot; (2) error contained in the tampering with evidence charge application was harmless; and (3) error contained in the murder charge application did not warrant reversal or invalidate Alejandrez's judgment and sentence for murder.

We overrule Alejandrez's issues on appeal and affirm the judgment of the trial court.

Patricia O. Alvarez, Justice

DO NOT PUBLISH