IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1997 SESSION

FILED

June 18, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 03C01-9605-CC-00199 |
| Appellee, | * | JEFFERSON COUNTY |
| VS. | * | Hon. Ben W. Hooper, II, Judge |
| JERRY WAYNE EDISON, | * | (DUI) |
| Appellant. | * | |

For Appellant:

Lu Ann Ballew
Asst. Public Defender
P.O. Box 416
Dandridge, TN  37725

For Appellee:

Charles W. Burson
Attorney General & Reporter

Michael J. Fahey, II
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243-0493

James L. Gass
Assistant District Attorney General
P.O. Box 70
Dandridge, TN  37725-0070

OPINION FILED:_____

AFFIRMED

GARY R. WADE, JUDGE

## OPINION

A jury found the defendant, Jerry Wayne Edison,[1] guilty of DUI; the trial court imposed a sentence of eleven months and twenty-nine days, suspended after the service of seven days in jail, and revoked the defendant's license for one year. The sole issue on appeal is whether the trial court erred by admitting the results of the defendant's breath test into evidence at trial.

At approximately 3:30 a.m. on February 17, 1994, Officer Steve Manning of the Jefferson County Sheriff's Department was on patrol in Dandridge when he saw a stalled car sitting in the traveling lane of a roadway. Two individuals were trying to push the car to the shoulder. Officer Manning approached the defendant, who was the driver of the stalled vehicle, and detected a strong odor of alcohol. The defendant was placing chewing tobacco in his mouth. As the other individual returned to the passenger side of the vehicle, the officer directed the defendant to get out of his vehicle and to remove the tobacco from his mouth. The defendant, who admitted that he had consumed a few beers, failed the fingertip to nose test, the standing on one foot balance test, and the hand and eye coordination test. Officer Manning then placed the defendant under arrest.

Officer Merlin Foister testified that he had been trained by the TBI to operate the Intoximeter 3000 breath machine. Over objection by the defense, the officer was allowed to testify that the defendant registered a blood alcohol level of .12.

The defendant's sister, Carol Hatley, testified for the defense. She claimed that the defendant had spent the day at her house. She related that her

---

[1]While some court documents refer to the defendant as "Jerry Wayne Eidson," it is the policy of this court to use the defendant's name as it is listed on the indictment.

son, Mark Wade, left with the defendant around 6:30 in the evening. She testified that she saw her son the next day but has not seen him since because of his "drinking problems."

The defendant testified that when he was arrested, he had a valid Florida driver's license. He claimed that he and his nephew had been to Cotton Eyed Joe's in Knoxville where he had had two beers and some snack foods. He maintained that he drove from Knoxville to Dandridge without any difficulty but then had car trouble. He said that he and his nephew were pushing the car out of the road when Officer Manning arrived. His nephew had a beer in his possession. The defendant contended he had difficulty with the field sobriety tests because the end of his big toe on his right foot had been cut off in a lawnmower accident. Medical records confirmed this. The defendant insisted that his driving had not been impaired.

On appeal, the defendant argues the trial court erred by admitting the breath test evidence. He asserts that Officer Foister's testimony should not have been allowed under the test established in State v. Sensing, 843 S.W.2d 412 (Tenn. 1992).

Prior to Sensing, a prerequisite to the admissibility of the test results was that the operator had to "know the scientific technology involved in the function of the machine." Id. at 416. Our supreme court "relax[ed] the rigorous prerequisites formerly required to authenticate the reliability of the scientific equipment ...." Id. Although the testing officer does not have to testify about the "scientific technology involved," he must be able to testify to the following:

> (1) that the tests were performed in accordance with the standards and operating procedure promulgated by the forensic services division of the Tennessee Bureau of

3

Investigation;

(2) that [the testing officer] was properly certified in accordance with those standards;

(3) that the evidentiary breath testing instrument used was certified by the forensic services division, was tested regularly for accuracy and was working properly when the breath test was performed;

(4) that the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate;

(5) evidence that [the testing officer] followed the prescribed operational procedure; and

(6) [that the testing officer] identify the printout record offered in evidence as the result of the test given to the person tested.

Id. In State v. Bobo, 909 S.W.2d 788, 790 (Tenn. 1995), our supreme court described Sensing as "establish[ing] the prerequisites for threshold admissibility of breath alcohol test results."

In State v. McCaslin, 894 S.W.2d 310 (Tenn. Crim. App. 1994), the testing officer was unable to testify that he had watched the defendant for the requisite twenty minutes; in consequence, the test results were found inadmissible. In McCaslin, the officer had placed the defendant in the patrol car at 2:20 a.m., arrived at the police station at 2:30 a.m., and administered the test at 2:46 a.m. Id. at 311. The "undisputed period of observation" was sixteen minutes. Id. Our court held that the time the defendant was in the patrol car could not be considered because the officer could not "say with certainty that the defendant did not regurgitate while out of his view in the backseat of the patrol car from 2:20 a.m. until they arrived at the station." Id. at 311-12.

In McCaslin, the state had argued that the test results should nevertheless have been admitted because the defendant did not present any

4

evidence that he had in fact regurgitated. This court responded to that argument as follows:

> [T]he State's position is misplaced as it is the State's burden, not the defendant's, to present testimony through the testing officer that the Sensing pre-test requirements were met. Therefore, a claim that the defendant either presented or failed to present testimony of regurgitation is irrelevant in this case.

Id. at 312.

In Bobo, our supreme court reaffirmed the Sensing requirements; the state had conceded that the operational procedures for administering the test were not followed but argued that the result should have been allowed because the procedural deviation benefitted the defendant by giving a lower reading. Our supreme court rejected that argument:

> Courts admit competent, reliable evidence to assure a fair, just result. Rules of admissibility must be applied uniformly and universally, regardless of the outcome. Here the state failed to meet the threshold requirements for admitting the results of defendant's breath alcohol test. The trial court was correct in suppressing the results.

Bobo, 909 S.W.2d at 790.

The six requirements in Sensing are mandatory and must be "scrupulously followed." State v. Harold E. Fields, No. 01C01-9412-CC-00438, slip op. at 4 (Tenn. Crim. App., at Nashville, Apr. 12, 1996). Further, it is the state's burden to establish compliance with each of the requirements; the defendant does not bear any burden to show non-compliance.

To properly review this issue it is necessary to consider Officer Foister's testimony in some detail. He testified that he had been trained by the TBI to operate the Intoximeter 3000 breath machine. When asked if the machine was

5

"certified as properly operating by the Tennessee Bureau of Investigation," he responded affirmatively. When asked if he followed the "proper procedures," he responded affirmatively. When asked "from all the information you used to operate that machine and your training, was it operated properly at the time," he responded affirmatively. When asked what steps he had taken with the defendant, the following testimony ensued:

> Officer Foister: [T]he first thing we do is, we had to observe him for twenty minutes. That's no cigarettes, no food, no nothing, intake. ... [A]fter that's done, then we print everything in the machine. ... [W]e print the name, date of birth, driver's license number, whether he was involved in an accident, the time, the arresting officer, all that's typed in. ... So after everything's in the machine, we hit, it starts and it purges itself, it cleans its whole system. ... So ... the machine tells us when we're ready to blow.
>
> Gen. Gass: And it did that in this case?
>
> Officer Foister: Yeah.

Before the officer testified as to the results of the breath test, defense counsel was permitted to conduct a voir dire. The officer then acknowledged that he did not have the TBI's certification of the intoximeter; he explained that the document had been posted at the jail on the night of the defendant's arrest. The officer testified that the machine is calibrated every three months: "I'd have to bring all the records over here to give you the dates." When asked if he could "testify as to when the last time this machine was calibrated before [the defendant] was brought in," he responded in the negative. He also indicated he did not know when "the last time ... a maintenance check had been done on this machine to insure that it was functioning properly." When asked if he could recall whether he followed the normal procedures in testing the defendant, the officer responded, "Well, I'm sure I followed the procedures, but I can't remember."

The defendant argues the officer's testimony failed to establish Sensing requirements (1), (3), and (5). Requirement (1) is that the tests were performed in accordance with the standards and operating procedure promulgated by the forensic services division of the Tennessee Bureau of Investigation. Officer Foister testified that the machine had been certified as operating in compliance with the procedures established by the Tennessee Bureau of Investigation. In our view, that is enough.

Requirement (3) is that the evidentiary breath testing instrument was certified by the forensic services division, was tested regularly for accuracy, and was working properly when the breath test was performed. Officer Foister testified that the documentation of certification was posted by the machine when he tested the defendant; he asserted that the machine is "checked every three months" but was uncertain as to when the machine was calibrated or last subjected to a maintenance check. Sensing, in our view, does not require that the officer relate the last date the machine was tested; it only requires that the officer testify that the machine is regularly tested. The state established that. Moreover, although there was no direct declaration that the machine was working properly, the officer's testimony implied that.

Requirement (5) directs the examiner to follow the prescribed operational procedures. On cross-examination, the officer candidly admitted that he could not remember whether he followed the procedures or not. At the hearing on the motion for new trial, the trial judge characterized the issue as follows:

> [I]t appears to me that there could be some questions
> raised that may need to be resolved. I would think that
> this certainly is not the first case where an officer was not
> able to remember precisely what took place, and I don't
> know whether that testimony amounts to a finding that
> whatever took place was certainly not proper procedure.
> I don't think I would want to go that far. It's a question of

7

> what effect does that type testimony have on the State's burden of proof. Of course it's far from saying yes, I didn't do so-and-so. Anyway, the Motion [for New Trial] is overruled.

We conclude from this that the trial judge made a factual determination that the officer did not remember what procedures he followed in testing the defendant.

Officer Foister's testimony on the fifth requirement raises evidentiary issues of first impression. First, we must determine by what standard of proof must the state establish that the Sensing requirements have been met. Secondly, we must determine what is the appropriate standard of appellate review of the trial judge's decision to admit the evidence. It has not been necessary to resolve these issues in prior cases interpreting Sensing because the proof in the prior cases established that certain of the procedures had not been followed. See, e.g., Bobo, 909 S.W.2d at 790 (state conceded that "prescribed operational procedure was not followed"); McCaslin, 894 S.W.2d at 311 (the "undisputed period of observation ... of sixteen minutes" was insufficient to meet the twenty minutes observation requirement). Because the proof here was not overwhelming in either direction, it is necessary to determine the applicable burden of proof and our scope of review.

Initially, we hold that the state must establish by a preponderance of the evidence that the Sensing requirements have been met.[2] In State v. Stamper, 863 S.W.2d 404, 405 (Tenn. 1993), our supreme court held that "the standard of proof necessary to show the existence of a conspiracy for the purpose of admitting co-conspirator statements is proof ... by a preponderance of the evidence." The

---

[2]Other state jurisdictions, however, have used a higher standard for varying types of scientific evidence. In City of Jackson v. Langford, 648 S.W.2d 927, 929 (Mo. App. 1983), the Missouri court required that the reliability of radar tests be established "beyond a reasonable doubt." Texas has the following rule for "novel scientific evidence": "The proponent of the evidence must prove to the trial judge, by clear and convincing evidence and outside the presence of the jury, that the proffered evidence is reliable and therefore relevant." Campbell v. State, 910 S.W.2d 475, 478 (Tex. Crim. App. 1995), cert. denied, 116 S. Ct. 1430 (1996).

<u>Stamper</u> court concluded as follows:

> [T]he appropriate standard of proof for preliminary facts required for the admission of evidence is proof by a preponderance of the evidence. We are satisfied that the preponderance standard is sufficient to satisfy the reliability concern that underlies the hearsay rule and has shaped the exceptions to it, including the exception for co-conspirators' statements.

<u>Id.</u> at 406 (footnote omitted).

Our rules of evidence provide that "[p]reliminary questions concerning the ... admissibility of evidence shall be determined by the court ...." Tenn. R. Evid. 104(a). One authority has noted that the preponderance of the evidence is the standard of proof under Tenn. R. Evid. 104, given our supreme court's broad language in the <u>Stamper</u> case:

> Rule 104 does not indicate what standard of proof must be satisfied in order to assess whether the facts necessary for an evidentiary rule to apply are present or absent. In <u>State v. Stamper</u>, the Tennessee Supreme Court held that "the appropriate standard of proof for preliminary facts required for the admission of evidence is proof by a preponderance of the evidence." Although this decision dealt specifically with the evidence necessary to establish a coconspirator's admission, the standard was expressed in general terms and may reflect the test in Tennessee.

Neil P. Cohen et al, <u>Tennessee Law of Evidence</u>, § 104.3 at 28-29 (3d ed. 1995) (footnotes omitted).

In this case, after hearing testimony from Officer Foister, and after hearing argument from counsel, the trial judge ruled that a "proper foundation has been laid." Implicit in this ruling is that the trial judge found the officer had, in fact, followed the required <u>Sensing</u> procedures.

Next, the admissibility of breath test evidence is analogous to the admissibility of expert testimony. The standard of review of the admissibility of

9

expert testimony is, of course, whether the trial court abused its discretion.  Our supreme court recently described that standard as follows:

> In Tennessee the qualifications, admissibility, relevancy and competency of expert testimony are matters which largely rest within the sound discretion of the trial court.  State v. Rhoden, 739 S.W.2d 6 (Tenn. Crim. App. 1987).  Such discretion, however, is not absolute and may be overturned on appeal where the discretion is arbitrarily exercised.  Baggett v. State, 220 Tenn. 592, 421 S.W.2d 629, 632 (1967).

State v. Ballard, 855 S.W.2d 557, 562 (Tenn. 1993).  Expert testimony typically involves some type of scientific or specialized knowledge.  The breath test is also based on science, even though Sensing established that the testing officer did not have to testify to the scientific basis for the test.  This court has consistently ruled that "whether to admit or exclude expert testimony and scientific evidence rests within the discretion of the trial court and relief on appeal will only be afforded if there was an abuse of discretion which was prejudicial."  State v. Tizard, 897 S.W.2d 732, 748 (Tenn. Crim. App. 1994) (emphasis added).  The breath test is clearly a type of scientific evidence.

We acknowledge that our supreme court clarified the standard for reviewing suppression determinations by the trial court in State v. Odom, 928 S.W.2d 18 (Tenn. 1996):

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact.  The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence.  So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld.  In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.  We also note that this standard of review is consistent with Tenn. R. App. P. 13(d), which provides that in civil cases, findings of fact by a trial court are presumed correct "unless the preponderance of the evidence is otherwise."

10

> Hereafter, the proper standard to be applied in reviewing suppression issues is the "preponderance of the evidence" standard.

Id. at 23 (emphasis added). If construed broadly, portions of the paragraph imply that all factual determinations a trial judge must make before deciding to admit evidence are subject to the Odom standard; since Odom, however, our court has continued to apply the abuse of discretion standard in the review of expert testimony. See State v. Leroy Hall, Jr., No. 03C01-9303-CR-00065, slip op. at 28 (Tenn. Crim. App., at Knoxville, Dec. 30, 1996) ("the trial court's ruling [to allow the expert testimony] was within its discretion and was appropriate"); State v. Terrance B. Pulliam, No. 02C01-9507-CR-00206, slip op. at 9 (Tenn. Crim. App., at Jackson, Oct. 22, 1996), perm. to app. filed, Dec. 24, 1996; State v. James Ryion, No. 01C01-9511-CC-00365, slip op. at 14 (Tenn. Crim. App., at Nashville, Dec. 30, 1996), perm. to app. filed, Feb. 12, 1997. Our courts have also continued to use the abuse of discretion standard in reviewing chain of custody issues. See State v. Kirby G. Thurmon, No.02C01-9512-CR-00375, slip op. at 8 (Tenn. Crim. App., at Jackson, Oct. 17, 1996), perm. to app. filed, Dec. 16, 1996.

Odom dealt specifically with the standard of review of a trial court's determination that a confession was voluntary. 928 S.W.2d at 22-23. All of the cases cited in Odom concern the admissibility of evidence allegedly obtained in violation of the Fourth or Fifth Amendment. Id. It is our view that admissibility of breath test evidence is more closely akin to admissibility of expert testimony than it is to determinations on the admissibility of illegally seized evidence. As indicated by the cases cited above concerning the standard of review of the admissibility of expert testimony and the determination that the chain of custody has been satisfied, the Odom standard of review has not been interpreted as applying to every single factual determination a trial judge must make before deciding to admit evidence. See also State v. McLeod, 937 S.W.2d 867, 871 (Tenn. 1996) (In discussing the

11

admissibility of hearsay statements under the medical diagnosis exception, our supreme court, post-Odom, stated, "It is well established that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of that discretion.")

Accordingly, we conclude the appropriate standard of review is whether the trial court abused its discretion. Using this standard, we cannot find error in this case. The evidence is not overwhelming either way. There is, however, a modicum of proof to support the trial court's determination that the testing officer more probably than not followed the correct procedures in this case. Officer Foister insisted that he was certain he had followed the correct procedures, notwithstanding his failure to recall the specifics. The officer was able to testify to the correct procedures. The test results printout shows that the officer tested a blank against a standard and then tested a blank against the defendant's breath. Officer Manning testified that he observed the defendant for the requisite twenty minutes and then witnessed the breath test. Obviously, the trial judge is in a better position than we to assess the officer's credibility. Thus, it is our conclusion that the trial court did not abuse its discretion by admitting the results. The state might consider the use of a checklist so as to more closely adhere to the Sensing requirements.

Accordingly, the judgment of conviction is affirmed.

_____
Gary R. Wade, Judge

CONCUR:


_____
Joseph M. Tipton, Judge

_____
Curwood Witt, Judge