## Ex parte Robert James CAMPBELL.

## No. WR–44551–05.

## Court of Criminal Appeals of Texas.

## May 8, 2014.

Robert C. Owen, Raoul D. Schonemann, for Robert James Campbell.

---

## ***ORDER***

PER CURIAM.

This is a subsequent application for a writ of habeas corpus filed pursuant to the provisions of Texas Code of Criminal Procedure Article 11.071 § 5, and a motion to stay applicant's execution.

In May 1992, a jury found applicant guilty of the offense of capital murder. The jury answered the special issues submitted pursuant to Texas Code of Criminal Procedure Article 37.071, and the trial court, accordingly, set applicant's punishment at death. This Court affirmed applicant's conviction and sentence on direct appeal. *Campbell v. State,* 910 S.W.2d 475 (Tex.Crim.App.1995). Applicant filed his initial post-conviction application for a writ of habeas corpus in the convicting court on April 23, 1997. This Court denied appli-

cant relief. *Ex parte Campbell,* No. WR–44,551–01 (Tex.Crim.App. Mar. 8, 2000)(not designated for publication). Application filed his first subsequent application in the trial court on May 28, 2003, in which he asserted that his execution would violate the Eighth Amendment because he was mentally retarded and that the jury should have determined the issue of mental retardation. This Court dismissed applicant's first subsequent application. *Ex parte Campbell,* No. WR–44,551–02 (Tex. Crim.App. July 2, 2003)(not designated for publication). In his second subsequent habeas application, which was filed in the trial court on August 14, 2006, applicant raised *Brady* and actual innocence claims. This Court dismissed that application on April 25, 2007. *Ex parte Campbell,* 226 S.W.3d 418 (Tex.Crim.App.2007). Applicant's third subsequent habeas application, in which he raised a Penry claim, was filed in the trial court on September 5, 2012. After filing and setting the application, the Court denied relief in an unpublished opinion. *Ex parte Campbell,* No. AP–76,907 (Tex.Crim.App. Nov. 7, 2012)(not designated for publication). The instant application was filed in the trial court on May 5, 2014.

In this application, applicant asserts that he is mentally retarded and, therefore, his execution will violate the Eighth Amendment. He further asserts that he was deprived of competent counsel in his initial writ application and that this Court should nonetheless consider his effective assistance of trial counsel claim.

We have reviewed the application and find that the allegations do not satisfy the requirements of Article 11.071 § 5. Accordingly, the application is dismissed as an abuse of the writ. Art. 11.071 § 5(c). Further, we decline to re-open the prior

writ applications in which applicant previously raised these claims. Applicant's motion to stay his execution is denied.

IT IS SO ORDERED.

ALCALA, J., filed a dissenting statement in which PRICE, JOHNSON, and COCHRAN, JJ., joined.

ALCALA, J., filed a dissenting statement in which PRICE, JOHNSON, and COCHRAN, JJ., joined.

I respectfully dissent from this Court's order dismissing the subsequent application for a writ of habeas corpus filed by Robert James Campbell, applicant, who is scheduled to be executed in less than one week by the State of Texas. I would grant applicant's motion for stay of execution, reopen his 2003 application for a writ of habeas corpus, find that there is prima facie evidence of mental retardation, and remand the application to the trial court for consideration of his claim on the merits.

Applicant has now presented compelling evidence to show that he is ineligible for execution under *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), in which the Supreme Court held that the execution of a mentally retarded person violates the federal Constitution. Applicant's trial, direct appeal, and initial habeas proceedings all occurred before *Atkins* was decided, but shortly after the decision, he filed a subsequent writ application alleging that he was mentally retarded and ineligible for execution. In that second application, this Court concluded that applicant had failed to establish a prima facie case of mental retardation within the understanding of *Atkins*. *See Ex parte Campbell*, No. WR–44,551–02 (Tex.Crim.App. July 2, 2003); *see also In*

re *Campbell*, 82 Fed.Appx. 349 (5th Cir. 2003) (denying applicant's motion for authorization to file successive federal habeas petition based on failure to make prima facie case of mental retardation). In that application and in his federal habeas proceeding in which he raised the same claim, applicant presented evidence of severe childhood poverty, child abuse, extreme emotional disturbance, inadequate educational opportunities, poor school performance, and a possible congenital risk factor for mental retardation. This Court determined that applicant's allegation of mental retardation was unsupported by prima facie evidence showing that he suffered from any intellectual disability, and it dismissed the application on that basis. *See Campbell*, No. WR–44,551–02 (concluding that applicant had failed to present "sufficient specific facts" that would support finding of "significantly subaverage general intellectual functioning required under *Atkins*").

Applicant's current subsequent application, his fifth, presents evidence of mental retardation that was unavailable to him at the time that he filed his second application because he was given misinformation by one governmental entity, the Texas Department of Criminal Justice (TDCJ). Applicant originally contacted TDCJ in 2003 to request "any and all intellectual functioning tests." Shortly after that request, TDCJ informed applicant that the only IQ testing performed on applicant was during a prior term of incarceration in 1990, at which time he received a test score of 84, which fell outside the range of scores that would signify mental retardation. Applicant's 2003 habeas counsel accepted that statement as true. Later, however, subsequent habeas counsel learned that TDCJ administered a "WAIS–R IQ Short Form" in 1992 and that applicant had scored a 71,

a score that, after applying the standard margin of error, would indicate mental retardation. Had TDCJ not misinformed former habeas counsel regarding applicant's available IQ test scores, then this Court would have had IQ testing supportive of applicant's mental-retardation claim during the earlier habeas proceeding, and applicant would have been able to make out a prima facie case of mental retardation at that time.

Furthermore, although there is nothing to suggest any impropriety of any kind by it, the Harris County District Attorney's Office was in possession of material evidence about applicant's possible, if not probable, mental retardation at the time that this Court decided his *Atkins* claim in 2003, but that information was not brought forward to this Court either by applicant's former habeas attorney or by the prosecution. When applicant's case was before this Court in 2003, the only school records in the possession of his then-habeas counsel were two pages reflecting (1) a partial record of applicant's middle school years and (2) his two failed attempts to make it through the ninth grade in high school. Subsequent habeas counsel learned in 2014 that the district attorney's office had subpoenaed a complete set of all available high school records for applicant in 1991. Those high school records included two pages of records from applicant's elementary school, which indicate that applicant's performance fell more than two standard deviations below the mean on two standardized mental ability tests, the Otis–Lennon Mental Ability Test and the Metropolitan Readiness Test. The records indicate that applicant had a deviation IQ score of 68 on the Otis–Lennon test, and performed in the lowest range on the Metropolitan test. This Court did not have the benefit of this information in 2003 when it determined that applicant had failed to establish a prima facie case of mental retardation, even though the State was in possession of this information at that time.

In addition to the elementary school records and TDCJ records, applicant's current application includes an affidavit from Dr. Leslie D. Rosenstein, a clinical neuropsychologist, who evaluated applicant in prison and diagnosed him as having "mild mental retardation." She examined the elementary school records that were recently obtained by current habeas counsel and provides an assessment of those records. She explains that, at the age of nine, applicant obtained a Deviation IQ of 68 on the Otis–Lennon Mental Ability Test, Form R. She reports that, at ages seven through twelve, applicant was assessed annually at school with the Iowa Tests of Basic Skills and he was in the forty-sixth percentile in the first grade, fifth percentile in the second grade, second percentile in the third grade, eleventh percentile in the third grade, which he repeated, fourth percentile in the fourth grade, and eighth percentile in the fifth grade. In her affidavit, Dr. Rosenstein explains why she believes that TDCJ's IQ score of 84 in 1990 is unreliable, and she concludes that the totality of the evidence supports her assessment that applicant is mildly mentally retarded.

Even assuming that current habeas counsel could have obtained the elementary school records from the State earlier than now, the current application provides evidence that TDCJ misinformed applicant about the existence of records that would have supported his mental-retardation claim when he first raised it in 2003. Though, perhaps, a habeas attorney could have uncovered the misinformation from

TDCJ earlier than the present application, it would be unjust to penalize an applicant for not uncovering such a falsehood previously when he had no basis to believe that a falsehood had been conveyed to him. I conclude that this Court should reopen applicant's earlier subsequent application and reconsider his mental-retardation claim on its merits as if it had been presented to this Court in the first instance. This Court should not base its decisions that determine whether a person will live or be executed based on misinformation or wholly inadequate information. By reviewing applicant's claim on the merits, this Court would fulfill its ultimate obligation to ensure that Texas abides by the constitutional prohibition against the execution of a mentally retarded person. Because the Court instead dismisses the application as subsequent without addressing these matters, I respectfully dissent.