

# IN THE
# TENTH COURT OF APPEALS

### No. 10-13-00414-CR
### No. 10-13-00415-CR

**DAYMOND LAMONT STEWART,**

                                                    **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                    **Appellee**

### From the 82nd District Court
### Falls County, Texas
### Trial Court Nos. 9225 and 9226

## MEMORANDUM  OPINION

In one issue in both appellate cause numbers, appellant, Daymond Lamont Stewart, challenges his convictions for burglary of a habitation and aggravated sexual assault. *See* TEX. PENAL CODE ANN. § 22.021 (West Supp. 2014); *see also id.* § 30.02(c)(2) (West 2011). Specifically, Stewart argues that the trial court denied his constitutional right of confrontation by allowing evidence of a statistical "match" concerning DNA evidence. We affirm.

# I.   BACKGROUND

On the night in question, Lynne Richnow was working as a nurse at the Falls Community Hospital in Marlin, Texas. At around 12:30 a.m., Richnow received a telephone call from her daughter, Lacy Johnson, who was upset. According to Richnow, Johnson and Johnson's husband were having "an argument, a dispute." Richnow received permission to leave work to "take care of [her] kiddos."

Upon arriving at Johnson's house, Richnow played the role of "mediator, trying to calm everyone down." During the night, Richnow drank a beer with Johnson's husband, and Richnow and Johnson smoked a marihuana cigar. About an hour later, the dispute subsided, and Richnow left.

Richnow did not return to work because she had been drinking beer and smoking marihuana. After driving to the hospital to retrieve Richnow's wallet, Johnson drove Richnow home. During the drive, Richnow recalled seeing "a black male walking with a white wife beater," but she did not think anything of it at the time.

When she returned home, Richnow began hanging blinds while drinking a beer and smoking marihuana. Richnow recounted that, while sitting on her recliner, "a man appears with white covering his face and a red do-rag." The man told Richnow to give him all of her money, to which Richnow responded, "I ain't got no money, fool." The man then took Richnow's marihuana and hit her when she tried to get out of the recliner. Richnow recalled that the man continued to hit her and eventually pulled off her pants. Thereafter, the man forced open Richnow's legs and instructed her to play with herself. When she refused to comply, the man hit Richnow again. Eventually,

Richnow complied, and while doing so, the man pulled out his penis, briefly masturbated, grabbed Richnow's wallet, and took off running.

Once the man left her house, Richnow called 911 and provided dispatch with a description of the man. Later, in a photographic lineup, Richnow identified Stewart as the perpetrator of the offenses to a 70% degree of certainty. Richnow testified that her identification of Stewart as the perpetrator was based on his "eyes, his glasses, the width of his—the bridge of his nose." At trial, Richnow stated that she was 100% sure that Stewart was the perpetrator.

Stewart was charged by indictment with the offenses of burglary of a habitation and aggravated sexual assault. Included in the indictments was an enhancement paragraph referencing Stewart's 1999 conviction for felony burglary of a habitation.

At trial, Serena Zboril, a forensic scientist with the Texas Department of Public Safety Crime Laboratory in Waco, Texas, testified that she took DNA samples from Richnow's underwear, which yielded a mixture profile of at least three people. Zboril compared the profile from Richnow's underwear to a buccal swab that had been obtained from Stewart. Based on the comparison, Stewart could not be excluded as a contributor to the profile. Zboril also compared Stewart's DNA profile to a profile obtained from Richnow's wallet. The result of the test was a "single-source DNA profile, and that profile is consistent with the DNA profile of Daymond Stewart."

At the conclusion of the evidence, the jury found Stewart guilty of the charged offenses. Stewart admitted that the enhancement paragraphs contained in the indictments were true, and the jury sentenced Stewart to sixty years' incarceration in

the Institutional Division of the Texas Department of Criminal Justice for the count of burglary of a habitation. Stewart received a life sentence for the count of aggravated sexual assault. The trial court ordered that the imposed sentences run concurrently. These appeals followed.

## II. STANDARD OF REVIEW

We review a trial court's decision to admit evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). A trial court does not abuse its discretion if any evidence supports its decision. *See Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002). We will uphold the trial court's evidentiary ruling if it was correct on any theory of law applicable to the case. *See De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

## III. ANALYSIS

In his sole issue, Stewart contends that the trial court abused its discretion by admitting evidence of a statistical "match" concerning DNA evidence. Specifically, Stewart complains about Zboril's testimony concerning DNA evidence because her testimony described population ratios that were created by forensic experts of a FBI laboratory who were not called to testify. Stewart asserts that his rights under the Confrontation Clause were violated because he was unable to cross-examine the forensic experts of the FBI laboratory regarding the formulation of the population ratios.

Pursuant to Texas Rule of Evidence 702, before admitting expert testimony, the trial court must be satisfied that three conditions are met: (1) that the witness qualifies as an expert by reason of her knowledge, skill, experience, training, or education; (2) that the subject matter of the testimony is appropriate for expert testimony; and (3) that admitting the expert testimony will actually assist the factfinder in deciding the case. *Jessop v. State*, 368 S.W.3d 653, 671 (Tex. App.—Austin 2012, no pet.) (citing *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006); *Jackson v. State*, 17 S.W.3d 664, 670 (Tex. Crim. App. 2000)); *see* TEX. R. EVID. 702. These conditions are usually referred to as (1) qualification, (2) reliability, and (3) relevance. *Vela*, 209 S.W.3d at 131. Reliability focuses on the subject matter of the witness's testimony; the proponent of the expert testimony must demonstrate by clear and convincing evidence that the expert testimony is reliable. *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005).

Stewart's complaints center on the reliability of the DNA evidence. To be considered sufficiently reliable, scientific evidence must meet the following criteria: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Vela*, 209 S.W.3d at 134; *see Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992). Factors that could affect the trial court's determination of reliability include, but are not limited to: (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such a community can be ascertained; (2) the qualifications of the expert testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) a potential

rate of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of the person(s) who applied the technique on the occasion in question. *Kelly*, 824 S.W.2d at 573; *see Jessop*, 368 S.W.3d at 671.

The record in this case demonstrates that the State satisfied the three criteria to establish the reliability of the DNA evidence. *See Vela*, 209 S.W.3d at 134; *see also Kelly*, 824 S.W.2d at 573. DNA evidence has been held admissible in Texas. *Jessop*, 368 S.W.3d at 671 (citing *Jackson*, 17 S.W.3d at 672; *Campbell*, 910 S.W.2d 475, 478-79 (Tex. Crim. App. 1995); *Hicks v. State*, 860 S.W.2d 419, 423-24 (Tex. Crim. App. 1993), *overruled on other grounds by Rosales v. State*, 4 S.W.3d 228 (Tex. Crim. App. 1999); *Kelly*, 824 S.W.2d at 573). At a hearing held outside the presence of the jury, Zboril testified regarding the extraction of the DNA. Defense counsel asked Zboril about how Popstats, the computer database used to analyze DNA samples, works and objected to Zboril's testimony regarding population ratios. In response to questioning by the trial court, Zboril noted: "And all of our instruments are validated and our procedures are validated." When asked who validates the instruments, Zboril stated: "Our department, as well as probably the manufacturers of the instrument. They make sure that before they release it to their customers that they—that it does work." Zboril also testified that she is trained in the use of this program and that this program is widely used in the industry.

Zboril then described how she tested the DNA samples.[1] Because Zboril's testimony touched on the three criteria used to establish the reliability of DNA evidence, we cannot say that the trial court abused its discretion by allowing Zboril to testify about a statistical "match" concerning DNA evidence.[2] *See Martinez*, 327 S.W.3d at 736; *De La Paz*, 279 S.W.3d at 344; *Osbourn*, 92 S.W.3d at 538; *see also Vela*, 209 S.W.3d at 134; *Kelly*, 824 S.W.2d at 573..

Nevertheless, at trial and on appeal, Stewart argues that the State should have called an expert witness to demonstrate the statistical validity of the numbers generated by Popstats. We disagree. Texas courts have held that "the State is not required to present an expert on probability and statistics in order to show that DNA testing is reliable. Neither *Kelly* nor Rule 702 requires such a showing as a prerequisite to admission." *Jessop*, 368 S.W.3d at 671-72 (citing *Roberson v. State*, 16 S.W.3d 156, 168

---

[1] Later, in the presence of the jury, Zboril testified that: "There is a computer program that we use called Popstats, [which] is generated by the FBI. And I take the profiles that I have generated and put those numbers into the computer program and it will give me the random match probability."

[2] We are not persuaded by Stewart's reliance on the United States Supreme Court's decision in *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011). In *Bullcoming*, the Court addressed the following question:

> We granted certiorari to address this question: Does the Confrontation Clause permit the prosecution to introduce a forensic laboratory report containing a testimonial certification, made in order to prove a fact at a criminal trial, *through the in-court testimony of an analyst who did not sign the certification or personally perform or observe the performance of the test reported in the certification*. Our answer is in line with controlling precedent: As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness.

*Id.* at 2722 (emphasis added). Here, Zboril testified that she performed the DNA analysis in the forensic laboratory, and the record reflects that Zboril was subjected to cross-examination. Accordingly, we find the *Bullcoming* case to be factually distinguishable. *See id.*

(Tex. App.—Austin 2000, pet. ref'd); *Griffith v. State*, 976 S.W.2d 241, 251 (Tex. App.—Amarillo 1998, pet. ref'd).   Accordingly, we cannot conclude that Stewart's constitutional rights were violated.  *See id.*; *see also Roberson*, 16 S.W.3d at 168; *Griffith*, 976 S.W.2d at 251.  We overrule Stewart's sole issue in both appellate cause numbers.

## IV.    CONCLUSION

We affirm the judgments of the trial court.


AL SCOGGINS
Justice


Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed November 13, 2014
Do not publish
[CR25]

