**AFFIRM; and Opinion Filed March 6, 2015.**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-13-01687-CR

### JAMES DESTRY HAMM, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 382nd Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause No. 02-13-340**

## MEMORANDUM OPINION

Before Justices Bridges, Lang-Miers, and Myers
Opinion by Justice Lang-Miers

Appellant James Destry Hamm appeals his conviction for the offense of stalking. A jury found appellant guilty and assessed his punishment at six years' imprisonment. In three issues on appeal, appellant argues that portions of the charge to the jury were fundamentally erroneous and that the evidence was insufficient to support the conviction. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We affirm.

### BACKGROUND

The complainant testified that, during her junior year of high school when she was sixteen years old, a man who appeared to be in his mid-forties repeatedly drove by her, honked, smiled, and waved at her about once a week during her walk from school to work. Three or four

weeks after these incidents began, the complainant saw the same man pull his car into the parking lot of a convenience store that the complainant was entering. The man watched and waited for her to approach the store. As she came to the doors, he walked across the sidewalk, opened the door for her, and said, "Hey, how are you doing?" She did not respond and went into the store. The man also went into the store, purchased cigarettes, and then watched the complainant "like he was checking [her] out" as she waited in line to purchase a drink. He then exited and drove away. The complainant testified that she was "scared as he pulled up" and she did not know "if he was going to come up and grab" her. She testified that she was fearful because it appeared that he was "going to attempt" to "match [her] schedule and kidnap [her] or something." She stated that she had learned in school that "someone may attempt to kidnap you if they are following you and you don't know them."

During the summer, the same man honked and waved at the complainant a couple of times. But when the complainant began her senior year of high school, he began to honk to get her attention once a week or once every other week at the same intersection. In late September, as the complainant exited a store after purchasing a drink, she noticed that the same driver was driving very slowly beside her. When she looked at him, he waved, mouthed words to her that she could not understand, and "made gestures beckoning" her and pointed "at the passenger seat of his car, requesting that [she] come and get in his car with him." The complainant testified that she "was panicked" and concerned that he could kidnap her and "that he might stop the car and get out and pull me into the car[.]" After she turned away, the driver drove off. As the car passed, the complainant noted the license plate number and typed the number into her phone.

The complainant and her mother called the police to report the incident and the license plate number. Officer Josh Ellis of the Rockwall Police Department responded, and the

–2–

complainant and her mother described to him the history of the events leading up to the latest incident. Ellis asked the complainant to report any future incidents to the police.

Officer Ellis testified that he determined that the car was registered to appellant based on the license plate number. That evening, Officer Ellis went to appellant's residence and interviewed him. Officer Ellis testified that he explained to appellant that he had received a call from "a concerned mother and a daughter about her safety." Ellis testified, "I explained to Mr. Hamm that, you know, the victim was a juvenile and that it would be in his best interests not to make any more contact with her as she was in fear, you know, of her safety and her mother was also[.]" Ellis testified that appellant said that he did not think that he was doing anything wrong. Appellant also commented, "Well, how am I supposed to get a date if I can't talk to anyone?" Ellis responded, "Well, I'm not telling you you can't speak to anyone, but this particular individual, she is very concerned about her safety, and it would just be in your best interests not to speak with her and make any more contact with her." Ellis testified that he thought "Mr. Hamm understood . . . the seriousness of it, and he assured [Ellis] that he would not make any more contact with the victim." Ellis stated that he felt that "going to Mr. Hamm's residence and expressing . . . the concern from the mother and the victim, that he would . . . stop" and that "basically he told [Ellis] that he would" as appellant "apologized and said he wouldn't make any more contact." When asked what it indicates when a person continues engaging in conduct that the police requested that they stop, Ellis responded, "It basically tells me that they didn't comprehend it or they're just ignoring the law and going to continue, you know, harassing or stalking someone."

After Officer Ellis met with appellant, the complainant did not see appellant for several months. But during the spring semester, appellant began to follow and honk at her again. After two or three of these incidents, appellant drove up the street behind the complainant as she

walked on the sidewalk and "was following" her. He honked, and when she did not look at him, he honked again, "persisting that [she] give some attention." When she looked, the driver smiled, waved, and then turned the corner.

The complainant and her mother reported the incident to the police. Officer John Donaldson of the Rockwall Police Department responded, and heard about the recent and past incidents involving appellant from the complainant and her mother. Donaldson testified that he contacted Officer Ellis prior to interviewing appellant, and that Ellis told him that Ellis had "informed Mr. Hamm that he had placed a juvenile female in fear due to his repeated attempted contacts with her; that she was young; that it was inappropriate; that a man of his age should not be approaching young girls in this fashion; and that he was to stop having contact with her." Donaldson then interviewed appellant at his residence. Donaldson testified:

> I reminded him that Officer Ellis had told him previously months earlier that his behavior had placed her in fear and he had been told to stay away from her, and here now the same pattern of behavior, same girl, and that he had placed her in fear where she was left crying at an intersection.

Donaldson testified that appellant eventually admitted that he knew to whom Donaldson was referring but said that it was a coincidence that he was near her. When asked if appellant understood "the point when [Donaldson] spoke to him, or did he seem to think that his behavior was okay[,]" Donaldson replied that appellant "did not get the point" and he "made excuses about his behavior," "changing the story" and "the excuse why it was okay." Donaldson testified that he strove to give appellant the opportunity to give a reasonable explanation for his repeated behavior, but that Donaldson did not find appellant's responses and excuses reasonable.[1] As a result, after the interview, Donaldson sought and obtained an arrest warrant against appellant.

---

[1] A video of Donaldson's interview of appellant was admitted as an exhibit for the State and played for the jury.

In his first issue, appellant argues that the application paragraph in the jury charge at the guilt-innocence phase of trial was fundamentally erroneous because it omitted an element of the offense: that a reasonable person would fear bodily injury or death from appellant's actions. In his second issue, appellant argues that the application paragraph of the jury charge was also fundamentally erroneous because it did not require the jury to find that appellant engaged in conduct that he knew or reasonably believed the complainant would regard as threatening bodily injury or death, but only that appellant knew or reasonably believed that the complainant would regard the conduct as threatening.

## Background

The jury charge read, in relevant part:

> Our law provides that a person commits an offense if, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, the person knowingly engages in conduct that the person knows or reasonably believes the other person will regard as threatening bodily injury or death to the other person, and causes the other person to be placed in fear of bodily injury or death, and would cause a reasonable person to fear bodily injury or death for himself or herself.
>
> . . . .
>
> "Reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as the actor.
>
> . . . .
>
> Now, if you find from the evidence beyond a reasonable doubt that between the dates of on or about June 1, 2012 and May 10, 2013, in Rockwall County, Texas, the defendant, JAMES DESTRY HAMM, did then and there unlawfully, knowingly engage in conduct directed specifically toward [the complainant] that the defendant knew or reasonably believed the said [complainant] would regard as threatening, and the defendant's conduct would cause fear, and did cause [the complainant] to fear bodily injury or death for said [complainant], by following [the complainant] on more than one occasion and by continuing to follow [the complainant] after being notified by Officer J. Ellis, Rockwall Police Department, that the defendant was placing [the complainant] in fear, and it is further presented in and to said Court, that each of the foregoing acts

was committed pursuant to the same scheme or course of conduct that was directed specifically at [the complainant], then you will find the defendant guilty as charged in the indictment.

The language of the application paragraph tracked the language of the indictment. Before the court read the charge to the jury, the defense stated that it had no objections to the charge.

## Applicable Law and Standard of Review

The previous version of section 42.072 of the penal code that applies here provides in relevant part:

(a) A person commits an offense if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:

(1) the actor knows or reasonably believes the other person will regard as threatening:

(A) bodily injury or death for the other person;

. . . .

(2) causes the other person . . . to be placed in fear of bodily injury or death . . . ;

. . . .

(3) would cause a reasonable person to fear:

(A) bodily injury or death for himself or herself[.][2]

In our review of a claim of jury-charge error, we must first determine whether there was error in the charge. *Druery v. State*, 225 S.W.3d 491, 504 (Tex. Crim. App. 2007). If there was error, we must then determine whether the appellant suffered harm as a result of the error. *Id.*;

---

[2] The legislature amended section 42.072 of the penal code in 2013. Because the amended version applies to offenses committed on or after September 1, 2013, the previous version of the statute applies here as Hamm was indicted for offenses committed between June 1, 2012, and May 10, 2013. Act of Jan. 27, 1997, 75th Leg., R.S., ch. 1, § 1, 1997 Tex. Gen. Laws 1, 1, *amended by* Act of Apr. 23, 1999, 76th Leg., R.S., ch. 62, § 15.02(e), 1999 Tex. Gen. Laws 127, 358, *amended by* Act of May 26, 2001, 77th Leg., R.S., ch. 1222, § 2, 2001 Tex. Gen. Laws 2795, 2795–96, *amended by* Act of May 19, 2011, 82nd Leg., R.S., ch. 591, § 1, 2011 Tex. Sess. Law Serv. 1433, 1433 (West) (amended 2013) (current version at TEX. PENAL CODE ANN. § 42.072 (West Supp. 2014)).

*Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). When an appellant did not object to the charge, the appellant must show that the error actually caused him egregious harm. *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). Errors that result in egregious harm are errors that deprive the defendant of a valuable right, affect the very basis of the case, or vitally affect a defensive theory. *Id.* at 461–62.

### Arguments of the Parties

Appellant argues that the wording and omissions in the jury charge allowed the jury to convict appellant "on less than the essential statutory elements and definition of the offense." Appellant contends that the error in the charge resulted in egregious harm because he was denied his right to a jury determination on each element of the alleged offense and, as a result, was denied a fair and impartial trial. The State responds that there was error in the jury charge, but argues that the error did not result in egregious harm.

### Analysis

"A jury charge must distinctly set forth the law applicable to the case and set out all of the essential elements of the offense." *Martin v. State*, 200 S.W.3d 635, 639 (Tex. Crim. App. 2006); *see* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007) (requiring the judge to deliver to the jury "a written charge distinctly setting forth the law applicable to the case"). "The meaning of a jury instruction must be taken from the whole charge, and jurors are not authorized to return a verdict except under those conditions given by the application paragraph of the charge." *Delapaz v. State*, 228 S.W.3d 183, 212 (Tex. App.—Dallas 2007, pet. ref'd). A jury charge is adequate

> if it either contains an application paragraph specifying all of the conditions to be met before a conviction under such theory is authorized, or contains an application paragraph authorizing a conviction under conditions specified by other paragraphs of the jury charge to which the application paragraph necessarily and unambiguously refers, or contains some logically consistent combination of such paragraphs.

–7–

*Plata v. State*, 926 S.W.2d 300, 304 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234, 239 (Tex. Crim. App. 1997).

In this case, the jury charge contained a "logically consistent combination of" the application paragraph with the earlier abstract paragraph that laid out the three elements of stalking. *See id.*; *see also Ploeger v. State*, 189 S.W.3d 799, 805 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (stating that "sub-paragraphs (1), (2), and (3) of section 42.072(a) are each elements of a single offense" of stalking). The application paragraph included the requirements that the jury find from the evidence beyond a reasonable doubt that appellant "knowingly engage[d] in conduct directed specifically toward [the complainant] that the defendant knew or reasonably believed the said [complainant] would regard as threatening, and the defendant's conduct would cause fear, and did cause [the complainant] to fear bodily injury or death for [herself.]" The abstract paragraph laid out the elements of the offense of stalking, stating that a person commits the offense of stalking if "the person knowingly engages in conduct that the person knows or reasonably believes the other person will regard as threatening bodily injury or death to the other person, and causes the other person to be placed in fear of bodily injury or death, and would cause a reasonable person to fear bodily injury or death for himself or herself."

As a result, the application paragraph stated the first element of stalking—that appellant knew or reasonably believed that the other person would regard his conduct as threatening—but did not include the last phrase of that element—"bodily injury or death for the other person." The abstract paragraph stated the element in its entirety, including the requirement that appellant know or reasonably believe that the other person "will regard" his conduct "as threatening bodily injury or death to the other person[.]" Similarly, the abstract paragraph stated the third element—that appellant's conduct "would cause a reasonable person to fear bodily injury or death for himself or herself." The application paragraph referred to this element with the

requirement that the jury find beyond a reasonable doubt that "the defendant's conduct would cause fear[.]"

Two cases that the State cites as authority are analogous. In *Dinkins v. State*, the appellant argued that the jury charge erroneously authorized a capital murder conviction without requiring that the second murder involved in the offense be committed intentionally or knowingly. 894 S.W.2d 330, 339 (Tex. Crim. App. 1995). Although the abstract portion of the charge defined capital murder and murder, the application portion did not state a culpable mental state for a second murder. *Id.* The court concluded that, because the application portion of the charge allowed the jury to convict the appellant of capital murder only if it found that both killings were murders and the abstract portion provided the statutory definition of murder, "the jury was instructed that a person commits capital murder only if both killings were committed intentionally and knowingly" and, as a result, the jury charge was not defective. *Id.* at 339–40.

In *Holley v. State*, the appellant argued that the application paragraph allowed conviction under the felony murder rule for a death that resulted during the commission of a misdemeanor because the application paragraph did not require a finding of serious bodily injury and allowed conviction upon a finding that defendant's conduct was committed recklessly. 766 S.W.2d 254, 255 (Tex. Crim. App. 1989). The application paragraph required the jury to find that the defendant "intentionally or knowingly or recklessly committed or attempted to commit a felony, to wit: injury to a child[.]" The abstract portion stated, "Our law provides that it is a felony to intentionally or knowingly or recklessly cause serious bodily injury to a child younger than fifteen years of age." *Id.* The court concluded that the application paragraph "tacitly incorporate[d] an abstract proposition of law which was stated earlier in the charge." *Id.* at 256. The court stated that, because the application paragraph properly instructed the jury under what circumstances they could convict appellant and because one of these circumstances—

commission of "a felony, to wit: injury to a child"—was "completely explained to the jury" in the abstract portion of the charge, the instructions provided a "complete map" to the jury of "each step necessary to convict." *Id.* Consequently, the court concluded that there was no error. *Id.* at 257.

Similarly, in this case, the application paragraph "tacitly incorporate[d] an abstract proposition of law" stated earlier in the charge. The application paragraph "informed the jury under what circumstances they could convict appellant" and two of these circumstances—that the defendant knew or reasonably believed that the other person would regard his conduct "as threatening" and that "the defendant's conduct would cause fear"—were "completely explained to the jury" in the abstract paragraph, which made clear that the defendant must have known or reasonably believed that the other person would regard his conduct as "threatening bodily injury or death to the other person" and the requirement that his conduct "would cause a reasonable person to fear bodily injury or death." Consequently, these instructions provided a "complete map" to the jury of each step that they had to follow in order to convict appellant. *See id.* at 256–57.

The authorities that appellant cites are distinguishable. In *Ploeger*, the court concluded that it was error for the application paragraph of the jury charge to state the three elements of stalking under penal code section 42.072 disjunctively rather than conjunctively. 189 S.W.3d at 804–07. The jury charge in this case stated the three elements of section 42.072 conjunctively. In *Campbell v. State*, the court of criminal appeals stated that "it is error for a trial judge to refer to the law of parties in the abstract portion of the jury charge and not to apply that law or to refer to that law in the application paragraph of the jury charge." 910 S.W.2d 475, 477 (Tex. Crim. App. 1995). In the present case, the application paragraph "refer[red]" to the three elements of stalking, which were explained completely to the jury in the abstract paragraph. In *Harris v.*

*State*, the court of criminal appeals held that, although the abstract paragraphs adequately explained the law, "there [was] a complete failure to apply this law to the facts and issues in evidence." 522 S.W.2d 199, 201 (Tex. Crim. App. 1975). In contrast, the jury charge at issue here contained an application paragraph that applied the law to the facts and issues. Likewise, in *Fennell v. State*, the court concluded that, because the court only instructed the jury abstractly on the issue of self defense and did not apply that law to the facts, there was error in the charge. 424 S.W.2d 631, 632–33 (Tex. Crim. App. 1968). As explained above, in this case, the jury charge not only explained the elements of stalking abstractly, it applied the law to the facts of the case.

We conclude that there was no error. We overrule appellant's first and second issues.

### SUFFICIENCY OF THE EVIDENCE

In his third issue, appellant argues that there was legally insufficient evidence to support the element requiring that appellant knew or reasonably believed that the other person would regard his conduct as threatening bodily injury or death. The State contends that the evidence was sufficient to support this element.

### Applicable Law and Standard of Review

In analyzing a claim of insufficient evidence, we review all the evidence in the light most favorable to the verdict and determine whether a rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Wise v. State*, 364 S.W.3d 900, 902 (Tex. Crim. App. 2012). The factfinder is the exclusive judge of the credibility of the witnesses and the weight to give their testimony and resolves all conflicts in the evidence. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). When we analyze the sufficiency of the evidence, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence

when viewed in the light most favorable to the verdict." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). We treat direct and circumstantial evidence equally. *Id.*

**Analysis**

Appellant argues the evidence was insufficient to establish that appellant knew or reasonably believed that the complainant would regard his conduct as threatening bodily injury or death because (1) the complainant and her family did not express their concerns directly to appellant, (2) there was not "a scintilla of evidence of actual threat of bodily injury or death[,]" and (3) there was no evidence that appellant "was aware of the nature of his conduct or that his conduct was reasonably certain to cause the result[.]"

Appellant argues that the "State's own proof negated the required culpability of the offense." He asserts that Officers Ellis and Donaldson "testified that if Appellant did not obey the warning he either did not comprehend or decided to ignore the law[.]" Appellant also relies on Donaldson's statement that appellant did not "get the point" and his "changing the excuse why it was okay." And appellant contends that the significance of Officer Ellis's warning to appellant to stay away from the complainant should be discounted because the "Complainant's Mother testified Ellis said that he didn't necessarily feel that the girl was in danger and that the Mother considered the danger more seriously than did Officer Ellis." In addition, appellant stresses Officer Ellis's testimony that appellant's acts, excluding the later honking incident, did not in their entirety constitute "an arrestable offense[.]" Appellant contends that, as a result, the evidence negates rather than proves "the guilty knowledge and intent required by the statute."

But, as the State points out, evidence in the record was sufficient to support a finding that appellant knew or reasonably believed that the complainant would regard his conduct as threatening bodily injury or death. Officer Ellis testified that he informed appellant that his

–12–

conduct placed the complainant in fear for her safety and that it would be in his best interest to cease his contacts with her. Ellis testified that he thought "Mr. Hamm understood . . . the seriousness of it, and he assured [Ellis] that he would not make any more contact with the victim." The fact that the complainant's mother testified that she did not believe that Officer Ellis considered the incidents as seriously as she did does not negate the fact that Ellis made appellant aware that he was placing the complainant in fear for her safety. And Ellis's testimony that he thought that appellant's later actions towards the complainant indicated that appellant did not "comprehend it" or that he was ignoring the law does not negate Ellis's testimony that he informed appellant and made him aware of the effect of his conduct on the complainant.

Likewise, Officer Donaldson testified that he reminded appellant that Officer Ellis had previously told him "that his behavior had placed her in fear and he had been told to stay away from her" and that, with this "same pattern of behavior, same girl," he "had placed her in fear where she was left crying at an intersection." Although Donaldson testified that appellant "did not get the point" and made excuses, Donaldson's testimony demonstrated that he informed appellant that his conduct was causing the complainant to be in fear of her safety.

In sum, viewing all the evidence in the light most favorable to the verdict, we conclude that the evidence was sufficient for a reasonable factfinder to find that appellant knew or reasonably believed that the complainant would regard his conduct as threatening bodily injury or death. *See Jackson*, 443 U.S. at 318–19; *Wise*, 364 S.W.3d at 902. We overrule appellant's third issue.

–13–

## CONCLUSION

We affirm the trial court's judgment.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
Tex. R. App. P. 47.2(b)

131687F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

JAMES DESTRY HAMM, Appellant

No. 05-13-01687-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 382nd Judicial District
Court, Rockwall County, Texas
Trial Court Cause No. 02-13-340.
Opinion delivered by Justice Lang-Miers,
Justices Bridges and Myers participating.


Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 6th day of March, 2015.