

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

## NO. PD-0290-23

---

### TAREQ ALKAYYALI, Appellant

### v.

### THE STATE OF TEXAS

---

**ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE SECOND COURT OF APPEALS TARRANT COUNTY**

---

FINLEY, J., filed a dissenting opinion.

### DISSENTING OPINION

This case involves unobjected-to jury charge error. The jury instruction's application paragraph omitted the causation requirement for murder under Section 19.02(b)(2) of the Texas Penal Code. The jury convicted Appellant. The question presented is whether the unobjected-to jury charge error egregiously harmed Appellant. Today, the plurality opinion agrees with the court of

appeals and holds that Appellant was egregiously harmed. I disagree. Therefore, I respectfully dissent.

## I.   Applicable Law

The jury charge's application paragraphs authorize a conviction. *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012) (first citing *Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996); and then citing *Campbell v. State*, 910 S.W.2d 475, 477 (Tex. Crim. App. 1995)). They apply the "pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations." *Id*. When there is jury-charge error, regardless of whether the error occurs in the abstract or application paragraphs, the reviewing court must determine whether the error harmed the defendant. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022). The requisite level of harm depends upon whether the defendant objected to the jury charge at trial. *Id*. If there was a timely objection to the error, then "the record need only show 'some harm.'" *Id*. (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)). If not, then "the record must show 'egregious harm.'" *Id*. (quoting *Almanza*, 686 S.W.2d at 171).

Egregious harm requires more than some theoretical harm. *See id*. Rather, an appellant must be actually harmed by the erroneous jury charge.

*See id.* "An erroneous jury charge is egregiously harmful if it affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory." *Id.* (citing *Almanza*, 686 S.W.2d at 171). Determining whether the defendant was egregiously harmed requires a fact-specific analysis, and it is challenging to satisfy. *See id.* Our analysis is guided by considering four factors: "(1) the entirety of the jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (citing *Almanza*, 686 S.W.2d at 171).

## II.  Analysis

As discussed below, I believe the first *Almanza* factor weighs in favor of egregious harm; the second factor is neutral; the third factor weighs in favor of no harm; and the fourth factor weighs neither in favor of nor against harm, because the first three factors consider all the relevant trial information. Considered in their totality, Appellant did not suffer egregious harm.

### a. The entirety of the jury charge.

Except for omitting the causation element at issue from the application paragraph, the jury charge was correct. Pertinent to Appellant's case are the differences between subsections (b)(1) and (b)(2) for murder under Texas Penal

Code Section 19.02. A person commits murder under subsection (b)(1) by "intentionally or knowingly caus[ing] the death of an individual." TEX. PENAL CODE § 19.02(b)(1). A person commits murder under subsection (b)(2) if he "intends to cause serious bodily injury and commits an act clearly dangerous to human life that *causes* the death of an individual." *Id.* § 19.02(b)(2) (emphasis added). The indictment alleged both subsections as alternate murder theories. Like the application paragraph, the indictment failed to include the causation requirement for subsection (b)(2) murder, but did include the causation requirement for subsection (b)(1) murder. And yet, the jury charge's abstract paragraphs correctly defined murder under both subsections. Thus, only the indictment and the application paragraph for the subsection (b)(2) murder offense omitted the causation element.

Under these circumstances, it is reasonable for the jury to have come to one of two conclusions about the subsection (b)(2) murder charge: (1) the abstract paragraph was incorrect, or (2) the application paragraph was incorrect. Faced with this inconsistency, the jury would have been further guided by the indictment, which shared the same defect as the application paragraph. The plurality opinion is correct in noting that "[t]he application paragraph is the 'heart and soul' of the jury charge because it 'specifies the factual circumstances under which the jury should convict or acquit.'" Op. of

Newell, J., at 19 (quoting *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012)). Because the application paragraph applies the law to the facts of the actual case and crime before the jury, it makes intuitive sense for the jury to discredit the abstract in favor of the application paragraph, especially when it mirrors the indictment's language. Therefore, this factor weighs in favor of a finding of egregious harm.

### b. The state of the evidence, including the contested issues and weight of the probative evidence.

As demonstrated by the court of appeals, there was legally sufficient evidence to affirm Appellant's conviction for murdering Moussa. *Alkayyali v. State*, 668 S.W.3d 445, 455–57 (Tex. App.—Fort Worth 2023). This weighs in favor of no harm for this specific *Almanza* factor.

The plurality opinion cites *Sanchez v. State*, 209 S.W.3d 117, 125 (Tex. Crim. App. 2006), for the proposition that "[t]he Court has held that a defendant suffers egregious harm when elements of an offense are disputed at trial and the jury is not required to find those elements to be proven beyond a reasonable doubt prior to convicting a defendant." Op. of Newell, J., at 22. However, I am unconvinced that omitting the causation element created a situation in which the jury "could essentially disregard any of the evidence Appellant pointed to under his defensive theory that the murder had been an accident." *Id.* at 25. Appellant's "accident defense" did not thrust causation into

issue. Nor does an accident necessarily implicate causation. An accident relates to a defendant's *mens rea*, which is a distinct inquiry from considering whether Appellant's conduct caused the death of Moussa.

Moreover, causation did not seem to be seriously disputed. Appellant centered his defensive theory around Moussa's heart condition and issues with fainting. But there was no evidence that Moussa's repaired ventricular septal defect (VSD) or fainting issues caused her death. In 2013, Moussa's VSD was surgically repaired. Moussa's VSD repair remained intact even after death. Dr. Krouse's autopsy report noted that the VSD abutted Moussa's heart's conduction system, and Dr. Fries explained that "every [VSD] is essentially abutting the conduction system." Dr. Fries further explained that fainting is not a symptom of a repaired VSD. In fact, Dr. Fries opined that he would expect syncope and fainting only if the VSD "was unrepaired and the person was in heart failure." Dr. Fries also noted that it would be unlikely for an unrepaired VSD to cause immediate death. Instead, it would lead to progressive and protracted heart failure. Dr. Fries even opined that the repaired VSD did not contribute to Moussa's death. Likewise, there was no evidence that fainting could have caused Moussa's death.

When considering Moussa's relevant medical history, neither health issue working independently or concurrently previously caused an injury even

remotely commensurate to death. It seems speculative, at best, to conclude that these health issues undercut the State's causation theory or put causation at issue. Thus, Moussa's medical history did not raise serious issues of causation, if any.

Yet the indictment and application paragraph matched and shared the same error—each omitted the causation element. It was reasonable for the jury to presume that the abstract paragraph contained the error, because it was unlike the indictment and application paragraph. This would tend to favor a finding of egregious harm because the jury may have disregarded the correct elements of subsection (b)(2) murder.

Finally, the plurality opinion considers the following three facts under *Almanza*'s fourth factor, *see* Op. of Newell, J., at 28–29, but they are relevant under *Almanza*'s second factor. I agree with the plurality opinion in that the following facts favor a finding of egregious harm: (1) "Dr. Fries testified that the common places where petechiae can be observed in cases of asphyxiation are the eyes, face, skin, and even some organs. However, petechiae were only observed under Moussa's scalp"; (2) Dr. Fries "also testified that there was bruising on her neck but that the bruising did not extend to her muscles"; and (3) "there was no damage to Moussa's hyoid bone nor any to the cartilage of her

thyroid and larynx, all of which are examined in cases of strangulation." *Id.* at 28–29. But the plurality opinion overstates their cumulative importance.

The petechiae being observed only under Moussa's scalp slightly undercuts the State's theory that Appellant suffocated Moussa to death. Yet its value remains slight because Dr. Fries also testified that petechiae can appear under an individual's scalp when the jugular vein is obstructed. This latter, alternative explanation requires a combination of smothering and strangulation or "some level of neck compression," which comports with the State's argument of how Appellant killed Moussa. *See infra* Section II.c.i. The bruising, or lack thereof, the lack of damage to Moussa's hyoid bone, and the lack of damage to the cartilage of Moussa's thyroid and larynx weigh in Appellant's favor because they provide some evidence that Moussa did not die by strangulation.

When the above facts are considered in their totality, I believe *Almanza*'s second factor is neutral.

## c. The arguments of counsel.

As discussed below, the arguments of counsel can be subdivided into the State's and defense counsel's. While the State's arguments favor a finding of no harm, defense counsel's arguments are neutral. Thus, this *Almanza* factor favors a finding of no harm.

i.     The State

The State's opening statement, as expected, provided a roadmap of the evidence it would present to the jury that would prove Appellant committed the murder. The opening statement was short and consumed a mere four pages of the trial's transcript. The State only discussed causation when it told the jury that it would hear from Dr. Fries, who would tell the jury that "the cause of death in this case was asphyxiation." But briefly stating the cause of death does not amount to a causation-based argument and does not weigh for or against egregious harm.

The State spent most of its opening argument discussing the circumstances surrounding Moussa's death because they were highly probative of Appellant's *mens rea* of intentionally or knowingly, either of which the State needed to prove to secure a murder conviction. The State discussed how Appellant smothered and strangled Moussa to death, which undercut Appellant's defense that their fight was over in seconds. This did not focus on causation. The State focused on negating Appellant's defense and establishing Appellant's *mens rea*.

The State, however, did spend the first third of its closing argument confronting causation. The State argued that nothing else besides Appellant's conduct could have caused Moussa's death. The State discounted Moussa's

VSD and fainting issues, and underscored Moussa's 2018 EKG that revealed no issues with her heart. The State urged the jury to accept its theory that Moussa had died because Appellant strangulated or suffocated her. Thus, the State spent some but not all of its closing argument on causation.

The State spent an insignificant amount of time on causation in its opening statement and closing arguments. Rather, the State devoted these key moments to persuading the jury to find that Appellant intentionally or knowingly killed Moussa, and that this was not an accident. This favors a finding of no harm.

ii. <u>Appellant</u>

As the plurality opinion states, defense counsel's opening statement included "inform[ing] the jury that Moussa had a history of fainting, that she had heart surgery at the age of eighteen, and that the repaired area was close to the area of the heart that can cause fainting." Op. of Newell, J., at 26. However, these references to Moussa's heart condition and fainting episodes do not activate a causation-based defense. To conclude otherwise requires the reviewing court to overanalyze the arguments and pan for gold when there is none. Notably absent from defense counsel's statement is that a history of fainting and a repaired VSD caused Moussa's death.

Defense counsel's closing argument opened with "Tareq Alkayyali didn't mean for [Moussa] to die." It closed with defense counsel explaining why the jury should find that Appellant (1) "did not inten[tionally] or knowingly cause [Moussa's] death"; (2) was not reckless; and (3) did not commit criminally negligent homicide. The beginning and ending of defense counsel's closing argument focused on Appellant lacking any criminal *mens rea*. Absent from defense counsel's final remarks is an argument about why Appellant did not commit subsection (b)(2) murder.

The closest defense counsel came to outright contesting causation occurred when he argued for the jury to disbelieve now-discredited Dr. Krouse, who conducted Moussa's autopsy. Even though Dr. Fries independently reviewed Moussa's autopsy, it still served as the basis upon which he testified. Defense counsel questioned the veracity of Dr. Krouse's conclusion that Moussa's cause of death was a "homicide or death at the hands of another and asphyxia." Defense counsel urged the jury not to rely on the autopsy's stated cause of death. And yet, Appellant offered no expert testimony that Moussa died from fainting or her repaired VSD, or both. Moreover, Moussa's autopsy was peer reviewed by at least five other medical examiners. Besides highlighting Dr. Krouse's other flawed autopsies, defense counsel failed to substantively argue why Dr. Krouse's conclusion was incorrect. At best, this

implicitly argues to the jury that it should question causation. Viewed in totality, this portion of Appellant's closing argument does not indicate that Moussa's cause of death was seriously contested by defense counsel.

Because defense counsel's opening statement and closing argument do not directly or seriously contest causation, they are neutral in determining harm for this *Almanza* factor.

### d. Any other relevant information revealed by the record of the trial as a whole.

For Appellant, all the relevant information fits into one of the first three *Almanza* factors. Accordingly, the fourth factor is neutral and neither weighs for nor against a finding of egregious harm.

In summary, the first *Almanza* factor is the only one that weighs in favor of egregious harm; the second and fourth *Almanza* factors are neutral; and the third *Almanza* factor weighs in favor of no harm. Because the *Almanza* factors do not support a finding that Appellant suffered egregious harm, I would reverse the judgment of the court of appeals.

## III.  Judge Parker's dissent.

I agree with Judge Parker's dissent to a certain degree. First, the plurality opinion incorrectly defined the legal issue, thereby reaching an incorrect conclusion. *See* Op. of Parker, J., at 1–2. Second, the plurality opinion relies on distinguishable precedent because Appellant's causation element was

not entirely omitted from the jury charge, and Appellant failed to object at trial. *See id.* at 2–5. Third, I largely agree with Part C of Judge Parker's dissent, which I interpret as a limited *Almanza* analysis. *See id.* at 20–30. But, for the reasons stated below, I do not agree with the other portions of Judge Parker's dissent.

To start, Judge Parker diminishes the jury charge's application paragraph's importance. The application paragraph applies the law to the facts and "specifies the factual circumstances under which the jury should convict or acquit." *Vasquez*, 389 S.W.3d at 366. Without it, the jury would not know whether to render an acquittal or a conviction. *See id.* It, therefore, functions as a guiding hand to the jury. Compared to the abstract paragraphs, the application paragraph will always be more difficult to read because it actually applies the law to the facts. The jury is certainly free to consult the abstract paragraphs for clarification purposes, but the abstract paragraphs are primarily aimed to "serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge." *Crenshaw*, 378 S.W.3d at 466. While the jury may have focused on the abstract paragraphs, *see* Op. of Parker, J., at 5–9, the abstract did not authorize Appellant's conviction. The application paragraph did. Thus, the jury was entitled to defer to the application paragraph, even though the abstract

paragraph differed, *contra id.* at 11. *Cf. Patrick v. State*, 906 S.W.2d 481, 493 (Tex. Crim. App. 1995) ("We conclude that because the facts, as applied to the law in the application paragraph, pointed the jury to the appropriate portion of the definitions, no harm resulted from the court's failure to limit the definitions of culpable mental states[.]").

Next, in light of the indictment's shared error, the entirety of the jury charge does not alleviate the harm caused by the omitted causation element. The application paragraphs, except for Section 19.02(b)(2) murder, correctly instructed the jury under which scenarios it could render a guilty verdict. Judge Parker is correct in noting that "[a]ny juror recalling the lesser-included offense instruction would find it very odd for the second murder theory to be the only offense in the entire jury charge that did not require a showing that Appellant caused the victim's death." Op. of Parker, J., at 12. Yet the indictment also omitted the causation element. Because the State never included the causation element for Section 19.02(b)(2) murder, its omission in the application paragraph is not so odd. The jury could have reasonably assumed that the abstract murder paragraph was wrong, not the indictment and application paragraph. *See supra* Section I.a. This would also explain why the jury did not seek clarification on Section 19.02(b)(2) murder's application paragraph. *But see* Op. of Parker, J., at 14.

Finally, I am hesitant to rely upon the premise that "[c]ausation is a widely understood element of murder." *Id*. at 13. While this might be true, it opens Pandora's box. Not to belabor the point, but the application paragraph outlines the basis upon which a jury may convict a defendant. *See Vasquez*, 389 S.W.3d at 366. It should contain every element of an offense. Its failure to do so should not be rendered harmless partially because of society's increased interest in and consumption of murder-related media. It seems misguided to permit the entertainment industry to usurp the role of the jury charge's application paragraph. We should be hesitant before permitting outside sources to affect our jury-charge error analysis. If not, then some mysterious threshold level of media coverage could impute constructive knowledge of a crime's essential elements to the jury. At that point, where would we draw the line?

## IV.  Conclusion

The jury-charge error in this case should not be repeated. My dissent is not intended to endorse the State's and defense counsel's failures. Both sides share some level of culpability. Moreover, I am hesitant to find egregious harm

in a situation like this because it may incentivize future defense attorneys to not object to similar jury charge errors.[1]

Had the error been objected to, I would join the plurality opinion. However, with the facts before the Court today, I do not conclude that Appellant suffered egregious harm. Because the plurality opinion holds otherwise, I respectfully dissent.

**Filed: May 7, 2025**
**Publish**

---

[1] The plurality opinion takes issue with this sentiment, *see* Op. of Newell, J., at 17 n.26, by misconstruing my hesitancy in finding egregious harm. It conveniently overlooks the *Almaza* analysis I conducted *supra* Part II and that I rely upon to conclude that Appellant did not suffer egregious harm. More importantly, the responsibility for timely and properly objecting to an erroneous jury charge falls upon the defendant or defense counsel. TEX. CODE CRIM. PROC. art. 36.14. ("Before said charge is read to the jury, the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections thereto in writing, distinctly specifying each ground of objection.").